**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| NATHANIEL PHILLIPS, | |
|     Plaintiff, | CIVIL ACTION |
| v. | COMPLAINT |
| DOVENMUEHLE MORTGAGE, INC. and NEIGHBORHOOD LENDING SERVICES, INC., | JURY TRIAL DEMANDED |
|     Defendants. | |

## COMPLAINT

NOW COMES Nathaniel Phillips ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Dovenmuehle Mortgage, Inc. ("Dovenmuehle") and Neighborhood Lending Services, Inc. ("NLS") (collectively "Defendants"), as follows:

### NATURE OF THE ACTION

1. This is an action brought by a consumer seeking redress for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* (hereinafter "RESPA"), Breach of Contract, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.*, and the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "TCPA").

2. All of the claims stated herein stem from the wrongful servicing and debt collection activities related to Plaintiff's mortgage loan.

### JURISDICTION AND VENUE

3. Subject matter jurisdiction is conferred upon this Court by 12 U.S.C. § 2605, Title 11 of U.S.C., and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States.

1

4.      Supplemental jurisdiction exists over the breach of contract and Illinois Consumer Fraud and Deceptive Business Practices Act claim(s) under 28 U.S.C. § 1367.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as both Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

**PARTIES**

6.      Plaintiff is a consumer and a natural person over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

7.      Dovenmuehle is a foreign corporation formed under the laws of the State of Delaware. Dovenmuehle has a principal place of business located at 1 Corporate Drive, Suite 350, Lake Zurich, Illinois 60047. "Dovenmuehle is one of the leading mortgage subservicing companies in the country servicing loans on behalf of commercial banks, savings banks, credit unions, insurance companies, mortgage banking companies and state and local housing finance agencies nationwide,"[1] including NLS in the State of Illinois.

8.      Dovenmuehle's "private label subservicing program" includes, among other services, the following[1]:

- Monthly borrower billing with fully customized statements using the lender's name, logo, colors and monthly messaging capabilities;
- Payment processing including mail payments through multiple lockbox locations nationwide, telephone payments, on-line payments, branch payments and Western Union payments;
- Escrow administration including bill collection for property taxes, hazard insurance and flood insurance, bill payments, escrow analysis and annual escrow statements;
- Collections counseling, loss mitigation including HAMP modifications, and default administration;

---

[1] www.dovenmuehle.com last viewed on December 3, 2017 at 6:04:17 P.M. (CST).

- Credit bureau reporting and all IRS and borrower year-end reporting.

9.     NLS is a domestic not-for-profit corporation formed under the laws of the State of Illinois with its principal place of business located at 1279 North Milwaukee Avenue, 5th Floor, Chicago, Illinois 60622.

10.     At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendant and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of the other Defendant and thus, each of the acts and omissions complained of herein were made known to, and ratified by each Defendant.

### FACTS SUPPORTING CAUSES OF ACTION

11.     On March 3, 2006, Plaintiff executed a mortgage in favor of NLS to secure promissory notes in the amounts of $106,041.00 ("Account 9067" or "First Mortgage") with monthly principal and interest installments of $704.07 (plus escrow) and a maturity date of April 1, 2036.

12.     On March 3, 2006, Plaintiff executed a promissory note in the amount of $49,000.00 ("Deferred Note") $0.00 monthly payments pursuant to the terms of the Deferred Note and a maturity date of March 31, 2011[2].

13.     On February 23, 2007, Plaintiff executed a mortgage in favor of NLS to secure a promissory note in the amount of $15,906.00 ("Account 2996" or "Second Mortgage"). The promissory note was payable in monthly installments of principal and interest in the amount of $117.47 with a maturity date of March 17, 2027.

---

[2] Paragraph 3(A) of the Deferred Note provided, in pertinent part: "I will not be required to pay principal and interest by making a payment every month. No minimum payments are required per Section 11 of this Note. If, on March 31, 0211, which is called the "Maturity Date" I have complied with all the terms and conditions of this Note, any remaining principal and interest amounts will be forgiven."

14.     At all times relevant, Plaintiff was the sole operator, possessor and subscriber of the cellular telephone number of XXX-XXX-6142 and therefore, was personally financially responsible for the cellular telephone equipment and services.

15.     In January 2010, Defendants claimed Plaintiff's Account 9067 was in default for December 2009 and January 2010. Plaintiff disputed that the loan was in default and requested that Defendants send him detailed accountings pertaining to both Account 9067 and Account 2996 (collectively "subject loans").

16.     Defendants acknowledged receipt of Plaintiff's request, but failed to provide Plaintiff with the requested accountings.

17.     Defendants continued to send Plaintiff notices alleging Account 9067 was in default. Plaintiff continued to dispute the alleged default and made numerous requests for complete itemized accountings of the subject loans, but NLS ignored Plaintiff's numerous requests.

18.     In an attempt to save his home, Plaintiff applied for a loss mitigation workout in 2010 and on or about November 1, 2010, Plaintiff entered into a Loan Modification Agreement modifying Account 9067 with a modified principal balance of $106,163.10 at 2.000% interest and new monthly payments of $597.53 and an upfront cash payment of $697.53.

19.     Despite the Loan Modification, Defendants continued to send Plaintiff dunning letters stating Account 9067 was in default when Plaintiff was, in fact, current with his mortgage payment. Plaintiff vigorously disputed the default status.

20.     On February 4, 2011, Plaintiff spoke with "Ms. Pat" in NLS's Mitigation Department regarding his request for a complete payment history.  According to "Ms. Pat," she requested the complete payment history from Customer Service on December 30, 2010.

4

21. On February 9, 2011, Plaintiff sent NLS a letter requesting that it justify placing Account 9067 in arrears and requesting a complete payment history.

22. In his February 9, 2011 letter, Plaintiff also asked that "all forthcoming correspondence be provided in writing until a level of trust is accepted by me as it relates to NLS."

23. On February 15, 2011, Plaintiff sent another letter to NLS disputing Defendants' position that Plaintiff's payments had not been made in a timely manner.

24. On July 13, 2011, NLS filed a Complaint to Foreclose Mortgage, Case No. 11 CH 24609 in the Circuit Court of Cook County, alleging "[T]he mortgagor has failed to pay the monthly installments due under the note and the loan is due for the November 1, 2010 payment. There remains an outstanding principal balance of $99,673.01 plus interest, attorney's fees, foreclosure costs, late charges, advances and expenses incurred by [NLS] due to the mortgagor's failure to make payments ("foreclosure action)."

25. Plaintiff applied for a loss mitigation workout in another attempt to save his home from foreclosure. NLS denied receiving all documents and despite Plaintiff resubmitting the documents several times, NLS denied Plaintiff's request for a loss mitigation workout on January 20, 2012, alleging Plaintiff had not submitted all documentation.

26. Plaintiff continued to dispute the default status of Account 9067 and submitted and resubmitted documentation in support of his request for a loss mitigation workout.

27. Finally, on or about December 1, 2012, Plaintiff was approved for and entered into a Loan Modification Agreement on Account 9067 with the following terms[3]:

- New Principal Balance $126,019.87;

---

[3] NLS wrongfully prosecuted the foreclosure action for 14 months, even obtaining a Judgement of Foreclosure on November 29, 2012. Then, only two days later, NLS entered into a loan modification with Plaintiff.

- Deferred Principal Balance of $26,346.86 (on which amount Plaintiff would not pay interest or make monthly payments);
- New Interest-Bearing Principal Balance $99,673.01;
- Years 1-3 (12/01/2012 – 12/01/2015) 2.000% interest with principal and interest payments of $445.76 (plus escrow), beginning 01/01/2013;
- Year 4 (12/01/2015 – 12/01/2016) 3.000% interest with principal and interest payments of $489.37 (plus escrow), beginning 01/01/2016;
- Years 5-24 (12/01/2016 – maturity, 04/01/2036) 4.000% interest with principal and interest payments of $533.33 (plus escrow), beginning 01/01/2017;
- Deferred Principal Balance, plus any other amounts owed, due at maturity.

*See* ***Exhibit A,*** attached hereto, a true copy of the loan modification agreement on Account 9067.

28. On or about December 14, 2012, Plaintiff was approved for and entered into a Loan Modification Agreement on Account 2996 with the following terms:

- Unpaid Principal Balance $11,908.44;
- 2.000% interest from 12/14/2012, with principal and interest payments of $80.09 beginning 01/14/2013;
- 3.000% interest from 12/14/2015, with principal and interest payments of $84.53 beginning 01/14/2016;
- 4.000% interest from 12/14/2016 until maturity (03/14/2026), with principal and interest payments of $88.73 beginning 01/14/2017.

*See* ***Exhibit B***, attached hereto, a true copy of the loan modification agreement on Account 2996.

29. On January 17, 2013, NLS dismissed the Foreclosure action.

30. Plaintiff made timely payments on the subject loans under the terms of the Loan Modification Agreements.

31. However, almost immediately after entering into the Loan Modification Agreements and following the dismissal of the Foreclosure action, on February 1, 2013, Defendants sent a Delinquent Notice to Plaintiff, regarding Account 9067, claiming the regular monthly payment in the amount of $662.35 due for 02/01/2013, plus late charges in the amount of $22.29.

32.     On March 1, 2013, Defendants sent a Final Notice to Plaintiff, claiming Account 9067 was two regular monthly payments past due, plus late charges.

33.     On April 3, 2013, Defendants sent a letter to Plaintiff stating Account 9067 was in default.

34.     On May 5, 2013, Defendants sent Plaintiff a Notice of Intent to Foreclose.

35.     On May 15, 2013, Defendants claimed Plaintiff was three payments past due on Account 9067.

36.     On May 22, 2013, Defendants sent Plaintiff a Notice of Breach and Right to Cure Default, claiming Account 9067 was due for monthly payments from 03/01/2013 to 05/01/2013, plus late charges and other charges.

37.     On May 31, 2013, Defendants returned Plaintiff's payment dated 05/28/2013 in the amount of $677.77 claiming the amount due was $2,061.46.

38.     On or about September 1, 2013, Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 due for the 09/01/2013 payment, plus late charges.

39.     On or about October 1, 2013, Defendants sent Plaintiff another Delinquent Notice claiming Account 9067 due for the 10/01/2013 payment, plus late charges.

40.     Plaintiff had made all payments pursuant to the terms of the December 1, 2012 and December 14, 2012 Loan Modification Agreements and therefore, Plaintiff disputed Defendants' Notices that Account 9067 was in default.

41.     On or about August 14, 2014, Defendants sent Plaintiff a Delinquent Notice on *Account 2996*, claiming the Account was due for 08/14/2014, plus late charges.

42.     Plaintiff continued to make timely monthly payments on Accounts 9067 and 2996 and, in fact, paid additional amounts to principal on both Accounts.

7

43. Defendants misapplied Plaintiff's payments for Account 9067 *to* Account 2996, causing Plaintiff's first mortgage (Account 9067) to reflect a delinquent status.

44. On April 26, 2016, Defendants applied payments in the amounts of $660.24 and $84.53 to Account 2996. The total of these payments, $744.77, was the monthly payment amount due on Account 9067.

45. The misapplication of the $744.77 payment caused Plaintiff's Account 9067 to be in a delinquent status.

46. As payments were being misapplied, over the years, Defendants would call Plaintiff on his cellular phone and wrongfully demand payment on the subject loans.

47. For example, on October 3, 2016, Dovenmuehle, caused a call to be to be placed a to Plaintiff's cellular telephone number. During this call, "Adrian", Dovenmuehle's representative, demanded payment on Account 9067.

48. During the October 3, 2016 telephone call, Plaintiff asked that Defendants communicate with him in writing *only*.

49. On or about October 11, 2016, Defendants sent Plaintiff a Delinquent Notice on Account 9067, claiming the Account was due for 10/01/2016, plus late charges.

50. On October 24, 2016, Dovenmuehle, using NLS's name, logo and letterhead[4], acknowledged receipt of Plaintiff's inquiry regarding funds posted to Plaintiff's Account 2996 stating: "We are pleased to advise you that the adjustment(s) you requested are completed**." *See Exhibit C,* **attached hereto, true copy of October 24, 2016 response from Dovenmuehle.

---

[4] Dovenmuehle used NLS's name, logo and letterhead for all acknowledgments of and response to Plaintiff's inquiries, NOEs and RFIs.

51.     On October 28, 2016, Dovenmuehle sent an acknowledgment regarding Plaintiff's inquiry as to Account 9067, stating that the inquiry had been referred to the appropriate area for review and "We will make every effort to provide a response to your inquiry as promptly as possible. In any event, we will do so within the time limit required by law." Dovenmuehle made no further response to Plaintiff's inquiry regarding Account 9067. *See **Exhibit D***, attached hereto, true copy of October 28, 2016 acknowledgment from Dovenmuehle.

52.     On November 11, 2016, Defendants' monthly statement for Account 9067 claimed the Account was past due for one month, plus late charges.

53.     On or about November 14, 2016, Defendants sent Plaintiff a Delinquent Notice on Account 9067, claiming the Account was due for the 11/01/2016 payment, plus accrued late charges.

54.     NLS's November 16, 2016 monthly statement for Account 2996 indicated that the loan was due for the ***03/14/2017*** payment.

55.     On December 5, 2016, Dovenmuehle sent a second acknowledgment regarding Plaintiff's inquiry regarding funds posted to Plaintiff's Account 9067, stating that it needed an additional 15 days to respond to the inquiry. "We will respond no later than 1/4/17." To date, Defendants have never responded to Plaintiff's inquiry**. *See **Exhibit E**,*** attached hereto, true copy of December 5, 2016 acknowledgment from Dovenmuehle.

56.     Defendants' December 12, 2016 monthly statement for Account 9067 claimed the Account was one month overdue.

57.     On or about December 12, 2016, Defendants sent Plaintiff a Delinquent Notice for Account 9067, claiming the Account was due for the 12/12/2016 payment, plus late charges.

58.     On December 13, 2016, Defendants' representative called Plaintiff's cellular telephone number.  Plaintiff again demanded that Defendants stop calling his cellular telephone.

59.     Dovenmuehle, Servicer for NLS, reported the following information on the December 31, 2016 mortgage interest statements (Form 1098):

> **Account 9067**:
> (Beginning Principal Balance per 2015 Form 1098) $111,226.58
> Ending Principal Balance $108,013.85
> Principal Paid $3,212.73
>
> **Account 2996:**
> (Beginning Principal Balance per 2015 Form 1098) $8,467.80
> Ending Principal Balance $6,073.09
> Principal Paid $2,394.71

60.     On January 9, 2017, a payment on Account 9067 in the amount of $820.77 cleared Plaintiff's checking account.

61.     On January 10, 2017, Defendants applied payments in the amounts of $730.12 and $90.65 (totaling $820.77) *to Account 2996*.

62.     Defendants' misapplication of the January payment caused Plaintiff's Account 9067 to be in a delinquent status.

63.     Defendants' January 11, 2017 monthly statement for Account 9067 claimed the Account was one month overdue.

64.     On or about January 11, 2017, Defendants also sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the 01/01/2017 regular monthly payment in the amount of $814.49.

65.     On February 1, 2017, Defendants sent Plaintiff a Final Notice claiming Account 9067 was due for two regular monthly payments, plus late charges.

10

66. On February 7, 2017, Defendants posted Plaintiff's payment in the amount of $814.77 to Account 9067 for the *January 2017* due date.

67. On February 10, 2017, Plaintiff sent Dovenmuehle a Notice of Error ("NOE") pursuant to 12 C.F.R. § 1024.35 and Request for Information ("RFI") pursuant to 12 C.F.R. § 1024.36. *See* **Exhibit F**, attached hereto, true copy of Plaintiff's February 10, 2017 NOE pursuant to 12 C.F.R. § 1024.35 and Request for Information pursuant to 12 C.F.R. § 1024.36.

68. The Plaintiff's NOE asserted that Dovenmuehle had reported derogatory and inaccurate information and statements regarding the above-referenced mortgage loan – namely, "maximum delinquency of 120 [days] in 09/2010 for $4,616 and in 12/2012 for $23,412."

69. Plaintiff's RFI pursuant to 12 C.F.R. § 1024.36 specifically requested:

1) An exact reproduction of the life of loan mortgage transactional history for this loan from the contract system of record from your electronic software program for this loan.

For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

2) Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan for the time period from January 10, 2014 to the present. *(Please Note: Since you have not responded to the Borrower's RFI, we amend this request to include the time period from January 1, 2013 to the present.)*

3) Copies of any and all mortgage statements for the above-referenced mortgage loan for the time period of January 1, 2013, to the present.

4) A detailed copy of your last three (3) analyses of the escrow account of the mortgage.

*See **Exhibit F.***

70.     On February 10, 2017, Plaintiff sent Dovenmuehle an RFI pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) specifically requesting:

1) The identity of and address for the current owner of the above-referenced mortgage loan.

2) The identity of and address for the master servicer of the above-referenced mortgage loan.

3) The identity of and address for the current servicer of the above-referenced mortgage loan.

*See **Exhibit G***, attached hereto, true copy of Plaintiff's February 10, 2017 RFI pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2).

71.     On February 10, 2017, Plaintiff sent Dovenmuehle an RFI pursuant to 12 C.F.R. § 1026.36(c)(3) specifically requesting a payoff statement related to Account 9067. *See **Exhibit H,*** attached hereto, true copy of Plaintiff's February 10, 2017 RFI pursuant to 12 C.F.R. § 1026.36(c)(3).

72.     On or about February 13, 2017, Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the 02/01/2017 payment, plus accrued late charges of $106.03.

73.     Also on February 13, 2017, Defendants' representative called Plaintiff's cellular telephone number and Plaintiff again demanded that Defendants stop calling his cellular telephone.

74.     On February 27, 2017, Dovenmuehle acknowledged receipt of the Plaintiff's February 10, 2017 inquiry regarding Account 9067. Dovenmuehle requested additional time to respond because "we have not completed our investigation of the error(s) identified in your correspondence." Dovenmuehle stated it would respond no later than 3/24/17**. *See **Exhibit I,***

12

attached hereto, true copy of Dovenmuehle's February 27, 2017 letter acknowledging receipt of Plaintiff's inquiry.

75.     On or about March 13, 2017, Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the March 1, 2017 payment, plus accrued late charges of $132.70.

76.     On April 4, 2017, Defendants sent Plaintiff a Final Notice claiming Account 9067 was due for two regular monthly payments, plus late charges.

77.     Defendants' April 14, 2017 monthly statement for Account 9067 claimed the Account was one month overdue, plus late charges.

78.     Defendants' May 2, 2017 monthly statement for Account 9067 claimed the Account was one month overdue, plus late charges.

79.     On June 2, 2017, Plaintiff made a payment to Defendants in the amount of $900.77, to be applied to Account 9067.

80.     Defendants did not apply the $900.77 payment to Account 9067.

81.     On June 5, 2017, Defendants erroneously applied the $900.77 payment to Account 2996 as a "principal payment."

82.     On June 6, 2017, Defendants' representative called Plaintiff's cellular telephone number regarding an account in the name of "Henry or Victoria Milton."

83.     Defendants' June 12, 2017 monthly statement for Account 9067 claimed the Account was two months overdue, plus late charges.

84.     Defendants' July 5, 2017 monthly statement for Account 9067 claimed the Account remained two months overdue, plus assessed late charges and fees for property inspection.

85. On July 20, 2017, Defendants sent Plaintiff, via certified mail, a Notice of Breach and Right to Cure Default, stating "the nature of your default is the failure to make the monthly mortgage payment(s) from June 1, 2017 to July 1, 2017. Late charges and other charges have also accrued in the amount of $253.38. The total amount past due now required to cure this default is $1,625.06" on or before August 29, 2017. Plaintiff's "failure to cure the default on or before August 29, 1027, may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding, and sale of the Property."

86. Defendants' August 3, 2017 and August 11, 2017 monthly statements for Account 9067 claimed the Account was three months overdue, plus late charges and property inspection fees.

87. On September 5, 2017, Plaintiff made payments to Account 9067 in the amount of $812.04 and to Account 2996 in the amount of $88.73.

88. On September 5, 2017 Defendants applied the $88.73 payment to Account 2996.

89. On September 5, 2017 Defendants erroneously applied the payment in the amount of $812.04 to Account 2996.

90. Defendants failed to apply the $812.04 monthly payment to Account 9067.

91. Defendants' September 11, 2017 monthly statement for Account 9067 claimed the Account was due for 07/01/2017, 08/01/2017 and 09/01/2017 payments in the amount of $814.49 each, and the current payment due in the amount of $774.60, plus fees totaling $334.72.

92. On September 11, 2017, Defendants sent Plaintiff a Notice of Acceleration, demanding the immediate payment of the total balance due in the amount of $104,789.03 (current principal balance of $78,462.03 and deferred principal balance of $26,327.00), plus interest, costs and fees on Account 9067.

14

93.     On October 4, 2017, Defendants rejected Plaintiff's payment to Account 9067 in the amount of $777.77 and returned the funds to Plaintiff on October 10, 2017.

94.     On October 11, 2017, Defendants claimed Account 9067 was overdue for 07/01/2017, 08/01/2017, 09/01/2017 and 10/01/2017 payments, along with the current payment.

95.     On October 17, 2017, Plaintiff made a payment to Account 2996 in the amount of $90.77 payment which was *rejected* by Defendants on October 23, 2017.

96.     On October 30, 2017, Plaintiff made another payment in the amount of $181.54 representing two monthly payments to Account 2996.  Defendants accepted these payments on November 6, 2017.

97.     Also, on or about October 30, 2017, Plaintiff made another payment in the amount of $1,555.54 representing two monthly payments to Account 9067.  Defendants *rejected* these payments on November 6, 2017.

98.     Defendants continue to reject Plaintiff's mortgage loan payments to Account 9067, refusing to properly and accurately apply the timely payments to Plaintiff's Account, and assessing late charges and penalties for Defendants' failure to receive Plaintiff's payments that Defendants had, in fact, received, rejected, and returned.

99.     Dovenmuehle refused to respond to Plaintiff's NOEs and RFIs regarding the status of the mortgage accounts and misapplication of payments. Fearful that he would lose his home to foreclosure, Plaintiff sought legal counsel with the Sulaiman Law Group, Ltd.

100.    On November 14, 2017, Plaintiff's attorneys sent the following NOEs and RFIs to Dovenmuehle which were delivered to Dovenmuehle on November 20, 2017:

> 1)  Notice of Error pursuant to 12 C.F.R. § 1024.35 for Defendants' failure
>     to respond to Plaintiff's February 10, 2017 Notice of Error and Requests

for Information [*See **Exhibit J***, attached hereto, true copy of NOE and RFI, certified mail tracking number 70140640000389013304];

2) Notice of Error pursuant to 12 C.F.R. § 1024.35 asserting Defendants' misapplication of Plaintiff's monthly payments and the assessment of late charges and other fees to Account 9067 since the December 1, 2012 Loan Modification Agreement [*See **Exhibit K***, attached hereto, true copy of NOE, certified mail tracking number 70150640000389013311];

3) Request for Information pursuant to 12 C.F.R. § 1024.36 regarding Account 2996 [*See **Exhibit L***, attached hereto, true copy of RFI, certified mail tracking number 70150640000389013328]; and

4) Request for Information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) regarding Account 2996 [*See **Exhibit M***, attached hereto, true copy of RFI, certified tracking number 70150640000389013335].

101. By letters dated November 20, 2017, Defendants acknowledged receipt of Plaintiff's "inquiry" regarding Account 9067 and the "inquiry" regarding Account 2996, each stating Dovenmuehle's effort to provide a response as promptly as possible and "in any event…within the time limit required by law." *See **Exhibit N***, attached hereto, true copies of Dovenmuehle's letters dated November 20, 2017, acknowledging receipt of inquiries regarding Accounts 9067 and 2996.

102. By letter dated November 21, 2017 (received by Plaintiff's counsel on November 28, 2017), Defendants produced a mortgage loan transaction history (03/14/2007 to 11/03/2017) for Account 2996 in partial response to Plaintiff's November 14, 2017 Request for Information pursuant to 12 C.F.R. § 1024.36 regarding Account 2996. *See **Exhibit O***, attached hereto, true copy of Defendants' letter dated November 21, 2017, in partial response to Plaintiff's November 14, 2017 RFI regarding Account 2996 (letter, only).

103. By letter dated November 28, 2017 (received by Plaintiff's counsel on December 7, 2017), Defendants produced a payoff statement, mortgage loan transaction history (02/2015 to 10/11/ 2017), annual escrow analysis dated 08/21/2017, and 11/16/2017 mortgage statement in

partial response to Plaintiff's November 14, 2017 RFIs and NOEs regarding Account 9067. *See Exhibit P*, attached hereto, true copy of Defendants' letter dated November 28, 2017, in partial response to Plaintiff's November 14, 2017 RFI regarding Account 9067 (letter, only).

104.    Defendants allege that they responded to Plaintiff's February 10, 2017 NOE and RFIs on March 1, 2017; however, Plaintiff never received the letter and enclosures purportedly sent on March 1, 2017. *See Exhibit Q*, attached hereto, true copy of Defendants' letter dated March 1, 2017, purportedly sent to Plaintiff in partial response to Plaintiff's February 10, 2017 NOE and RFIs regarding Account 9067 (letter, only).

105.    Furthermore, Defendants failed to conduct a reasonable investigation of Account 9067 and failed (a) to correct the errors or (b) to provide Plaintiff and Plaintiff's counsel with written notification that included a statement of the reason or reasons that Defendants found no error, in violation of 12 C.F.R. §§ 1024.35(e)(1)(i)(A)&(B).

106.    Defendants' mortgage loan transaction histories disclose misapplied payments to Account 2996 and to Account 9067, as well as escrow amounts and adjustments posted to the non-escrow Account 2996.

107.    Since Plaintiff's February 9, 2011 letter to NLS requesting that all communications from Defendants be in writing only, Plaintiff made several additional demands that all communications from Defendants be in writing and that Defendants cease calling his cellular telephone number.

108.    Nevertheless, since Plaintiff's February 9, 2011 letter to NLS, Defendants have made hundreds of calls to Plaintiff's cellular phone without his consent. Between October 3, 2016 and November 20, 2017 alone, Defendants placed no fewer than 78 telephone calls to Plaintiff's

cellular phone number without Plaintiff's consent. The harassing calls to Plaintiff's cellular phone continue today. [5]

### DAMAGES

109. Since 2010, Plaintiff made numerous requests for Defendants to provide him with documentation regarding his mortgage allegedly being in arrears, but Defendants refused to provide any such documentation.

110. In 2016, Plaintiff sought medical treatment for anxiety and depression directly caused by Defendants' conduct over the years.

111. Plaintiff was prescribed medication for anxiety and depression.

112. Furthermore, Plaintiff suffers from hypertension that has been exacerbated by stress and anxiety caused by Defendants' conduct.

113. In 2016, Plaintiff's medication dosage was doubled to combat the hypertension caused by and further exacerbated by Defendants' conduct.

114. Defendants have continued to erroneously deem Plaintiff's Account 9067 to be seriously delinquent and by refusing payments beginning in October 2017, Defendants have forced Plaintiff's Account 9067 to be accelerated and in a foreclosure status.

115. Defendants' acts and omissions resulted in severe injury to Plaintiff. Specifically, Defendants' acts and omissions are the proximate causation of Plaintiff's damages, which include, but are not limited to:

  i.   Anxiety, stress, and depression;

  ii.  Hypertension;

---

[5] In the calls Plaintiff answered, he noted a short pause and click before the caller spoke indicating that the calls were made using an auto-dialer.

18

iii.   Emotional distress (aggravation, frustration);

iv.   Inconvenience, loss of time and resources;

v.   Interest, late fees, property inspection fees, foreclosure costs, and other fees that have been wrongfully added to Plaintiff's loan balance;

vi.   Mental anguish;

vii.   Fear and anxiety associated with being subjected to living in a perpetual state of fear that his home was subjected to foreclosure through no fault of Plaintiff's, and that he would lose his home as a result of Defendants' actions;

viii.   Increased usage of cellular services;

ix.   Diminished battery capacity;

x.   Diminished data space; and

xi.   Increased usage of electricity

xii.   Certified mail expenses; and

xiii.   Attorney fees.

## COUNT I
## BREACH OF CONTRACT AS TO ACCOUNT 9067

116.   Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

117.   Plaintiff has a valid and enforceable loan modification contract with NLS as the creditor of the loan and Dovenmuehle as the servicer of Account 9067. *See Exhibit A.*

118.   Plaintiff fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

119.   Defendants breached the loan modification contract by:

i.   misapplying Plaintiff's principal, interest, and escrow payments;

ii.   rejecting Plaintiff's payments;

19

    iii.    scheduling the subject property for a foreclosure sale in May 2012 when Plaintiff was contractually current with his monthly payments;

    iv.    treating the loan in "default" when Plaintiff was contractually current;

    v.    failing to honor the terms of the loan modification;

    vi.    assessing and collecting unauthorized fees and costs, including "default" and foreclosure related fees after the effective date of the loan modification;

    vii.    failing to provide Plaintiff accurate account information or accurately respond to Plaintiff's correspondence and other disputes; and

    viii.    failing to conduct its affairs in good faith.

120.    Plaintiff suffered damages as set forth in paragraphs 110 to 115 that were proximately caused by the breach of contract.

WHEREFORE, Plaintiff Nathaniel Phillips requests that this Honorable Court:

    a.    find that Dovenmuehle and NLS materially breached the mortgage contract;

    b.    award Plaintiff his actual damages to be proven at trial; and

    c.    award Plaintiff any other relief this Honorable Court deems equitable and just.

## COUNT II
## BREACH OF CONTRACT AS TO ACCOUNT 2996

121.    Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

122.    Plaintiff has a valid and enforceable loan modification contract with NLS as the creditor of the loan and Dovenmuehle as the servicer of Account 2996. *See Exhibit B.*

123.    Plaintiff fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

124.    Defendants breached the loan modification contract by:

    i.    misapplying Plaintiff's principal and interest payments;

ii.   scheduling the subject property for a foreclosure sale in May 2012 when Plaintiff was contractually current with his monthly payments;

iii.  rejecting Plaintiff's payments;

iv.   treating the loan in "default" when Plaintiff was contractually current;

v.    failing to honor the terms of the loan modification;

vi.   assessing and collecting unauthorized fees and costs, including escrows, after the effective date of the loan modification;

vii.  failing to provide Plaintiff accurate account information or accurately respond to Plaintiff's correspondence and other disputes; and

viii. failing to conduct its affairs in good faith.

125.   Plaintiff suffered damages as set forth in paragraph 110 to 115 that were proximately caused by the breach of contract.

WHEREFORE, Plaintiff Nathaniel Phillips requests that this Honorable Court:

a.   find that Dovenmuehle and NLS materially breached the mortgage contract;

b.   award Plaintiff his actual damages to be proven at trial; and

c.   award Plaintiff any other relief this Honorable Court deems equitable and just.

## COUNT III
### VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT [6]

126.   Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

---

[6] According to Defendants, NLS "is the investor who obtains and services [Plaintiff's] loan" and Dovenmuehle "is a contracted agent assisting with the processing of [Plaintiff's] mortgage payments, managing escrow accounts, and answering questions regarding the servicing of [Plaintiff's] loan." The address for mailing NOEs and RFIs is Dovenmuehle's address; however, Defendants state that *NLS* is both the investor <u>and</u> the servicer. (*See Exhibit Q*).

21

127.    Each subject loan is a "federally related mortgage" under 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2.

128.    Dovenmuehle qualifies as a "servicer" under 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2.

129.    NLS qualifies as a "servicer" under 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2.

**a.      Violation of 12 U.S.C. §§ 2605(e)(2) & (k) and 12 C.F.R. § 1024.35(e)**

130.    12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.35(e)(3) require a loan servicer, within 30 days of receipt of a RFI or NOE, to (i) make corrections to the account and provide the borrower a written notice; or (ii) conduct an investigation and provide the borrower a written explanation as to why the servicer believes it servicing is correct; or (iii) conduct an investigation and provide the borrower a written explanation as to why the requested information is not available.

131.    Additionally, any written response must include the name and telephone number of a representative of the loan servicer who can provide assistance to the borrower.

132.    On October 24, 2016, Dovenmuehle *and* NLS, using NLS's name, logo and letterhead, acknowledged receipt of Plaintiff's inquiry regarding funds posted to Plaintiff's Account 2996 stating: "We are pleased to advise you that the adjustment(s) you requested are completed." *See Exhibit C.*

133.    On October 28, 2016, Defendants sent an acknowledgment regarding Plaintiff's inquiry as to Account 9067, stating that the inquiry had been referred to the appropriate area for review and "We will make every effort to provide a response to your inquiry as promptly as possible. In any event, we will do so within the time limit required by law." *See Exhibit D.*

134.    On December 5, 2016, Defendants sent a second acknowledgment regarding Plaintiff's inquiry regarding funds posted to Plaintiff's Account, 9067, stating that it needed an

additional 15 days to respond to the inquiry. "We will respond no later than 1/4/17." *See Exhibit E.*

135.     Defendants failed to respond to Plaintiff's October 24, 2016 inquiry.

136.     On February 10, 2017, Plaintiff sent Dovenmuehle the following NOE/RFI and RFIs:

    i.     A Notice of Error ("NOE") pursuant to 12 C.F.R. § 1024.35 and Request for Information ("RFI") pursuant to 12 C.F.R. § 1024.36. *See Exhibit F.*

    ii.     A RFI pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2). *See Exhibit G.*

    iii.     A RFI pursuant to 12 C.F.R. § 1026.36(c)(3) specifically requesting a payoff statement related to Account 9067. *See Exhibit H.*

137.     Each NOE and RFI was mailed to Dovenmuehle at the address designated for NOEs and RFIs on its website: Attention: Mail Stop NOE1290, 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.

138.     On February 27, 2017, Dovenmuehle *and* NLS, using NLS's name, logo and letterhead, acknowledged receipt of Plaintiff's February 10, 2017 "inquiry" regarding Account 9067, requesting additional time to respond because "we have not completed our investigation of the error(s) identified in your correspondence." Defendants stated, "***We will respond no later than 3/24/17.***" *See Exhibit I.*

139.     Defendants did not provide Plaintiff with a name and phone number of a Dovenmuehle or NLS representative who could provide assistance to Plaintiff. Instead, it provided an unidentifiable "1-866" number to call "if you have any questions." *See Exhibit I.*

140.     Defendants claim to have responded to Plaintiff's February 10, 2017 NOE and RFIs on March 1, 2017; however, Plaintiff was not in receipt of any response until Defendants enclosed

a March 1, 2017 letter and attachments with their November 28, 2017 response to Plaintiff's counsel.

141. With respect to the February 10, 2017 NOE pursuant to 12 C.F.R. § 1024.35 (*Exhibit F*), Defendants have failed to (a) make corrections to Account 9067; (b) conduct a reasonable investigation; or (c) respond to Plaintiff in one of the three methods allowed under 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.35(e)(3), in violation of 12 U.S.C. §§ 1024.35(e)(1)(i)(A)&(B).

142. With reference to Plaintiff's RFI requesting the identity of the owner of the mortgage loan Account 9067 (*Exhibit G*), Defendants failed to respond to Plaintiff's request within 10 business days, in violation of 12 U.S.C. § 2605(k).

143. With reference to Plaintiff's request for a payoff statement on Account 9067 (*Exhibit H*), Defendants failed to provide an accurate statement of the total outstanding balance within seven business days of receipt of request, in violation of 12 C.F.R. § 1026.36(c)(3).

144. Upon information and belief, Defendants' failure to comply with RESPA is part of a pattern and practice of non-compliance with the provisions of RESPA.

WHEREFORE, Plaintiff Nathaniel Phillips requests that this Honorable Court:

    a.   enter judgment in his favor and against Defendants;

    b.   award Plaintiff actual and statutory damages pursuant to 12 U.S.C. § 2605(f);

    c.   award Plaintiff costs and reasonable attorney fees pursuant to 12 U.S.C. § 2605(f); and

    d.   award Plaintiff any other relief this Honorable Court deems equitable and just.

## COUNT IV
## VIOLATION(S) OF THE TELEPHONE CONSUMER PROTECTION ACT

145.    Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

146.    All calls placed to Plaintiff's cellular telephone utilized an automatic telephone dialing system, as defined by 47 U.S.C. § 227(a)(1).[7]

147.    Plaintiff is informed and believes that all calls placed to Plaintiff's cellular telephone utilized a predictive dialer.[8] [9]

148.    Plaintiff is informed and believes that the predictive dialer utilized by Dovenmuehle dials a list of telephone numbers and connects answered dials to agents.

149.    All calls placed to Plaintiff's cellular telephone were not made for emergency purposes or placed with prior express consent of Plaintiff, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

150.    The foregoing acts and omissions of Dovenmuehle constitute multiple and numerous violations of the Telephone Consumer Protection Act, including but not limited to each and every one of the above cited provisions of 47 U.S.C. 227 *et seq.*

---

[7] An automatic telephone dialing system means equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such number.

[8] "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

[9] "When evaluating the issue whether equipment is an automatic telephone dialing system, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually, store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009).

151. At all times relevant, Dovenmuehle has been responsible for the servicing of Plaintiff's mortgage loan on behalf of NLS. As such, Dovenmuehle's violations of the Telephone Consumer Protection Act are imputed to NLS.

152. Despite repeated demands to cease calls to his cellular phone, Dovenmuehle defiantly continued making harassing calls to his cellular phone.

153. To the extent Dovenmuehle *ever* had consent to call Plaintiff, such consent was undoubtedly revoked.

154. As pled in paragraphs 110 to 115 above, Dovenmuehle's unfair acts and omissions resulted in severe injury to Plaintiff.

155. As a result of Dovenmuehle's violations of 47 U.S.C. 227 *et seq.* Plaintiff is entitled to receive $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B). What is more, as a result of Dovenmuehle's *knowing and willful violations* of 47 U.S.C. 227, Plaintiff is entitled to receive $1,500.00 in treble damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff requests the following relief:

   a.  find that Dovenmuehle negligently violated 47 U.S.C. § 227;

   b.  award statutory damages of at least $500.00, and treble damages of $1,500.00, for each and every violation; and,

   c.  grant any other relief deemed appropriate and equitable.

## COUNT V
### VIOLATION(S) OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

154. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

155. Plaintiff is a "person" as defined by 815 ILCS § 505/1(c).

156.    Plaintiff is a "consumer" as defined by 815 ILCS § 505/1(e).

157.    Dovenmuehle is engaged in "commerce" as defined by 815 ILCS § 505/1(f).

158.    NLS is engaged in "commerce" as defined by 815 ILCS § 505/1(f).

159.    It was immoral, oppressive, unethical, unfair and unscrupulous – and against public policy – for Dovenmuehle and/or NLS to fail to acknowledge the loan modifications, and instead, continue to treat Plaintiff's mortgage loan as if it were in default.

160.    It was immoral, oppressive, unethical, unfair and unscrupulous – and against public policy – for Dovenmuehle to cause to be placed numerous calls to Plaintiff's cellular telephone notwithstanding Plaintiff's repeated demands that it stop doing so.

161.    Dovenmuehle and NLS's unfair actions violate public policy and shed light on an industry where business decisions are driven by profit, with complete disregard for consumers, where mundane but unusual issues go unheeded – with the consumer suffering the consequences.

162.    As pled in paragraphs 110 to 115 above, Dovenmuehle and NLS's unfair acts and omissions resulted in severe injury to Plaintiff.

163.    An award of punitive damages is appropriate as Dovenmuehle and NLS's unfair acts and omissions were outrageous, wanton and willful, and showed a conscious disregard and indifference for the rights of Plaintiff, and consumers generally.

164.    Dovenmuehle and NLS's unfair acts and omissions showed a conscious disregard and indifference for the rights of Plaintiff, and consumers generally as:

   i. consumers reasonably anticipate that mortgage servicers will communicate accurately and truthfully regarding their accounts;

   ii. consumers reasonably anticipate that mortgage servicers will not use false, deceptive or misleading representations or means regarding their accounts; and

iii.    consumers reasonably anticipate that mortgage servicers will make honest efforts to resolve any and all disputes expeditiously and impartially.

WHEREFORE, Plaintiff requests the following relief:

a.    find that Dovenmuehle and NLS's unfair acts and omissions violate the Illinois Consumer Fraud and Deceptive Business Practices Act;

b.    award actual, and punitive damages, and costs of this action including expenses together with attorney's fees as determined by this Court; and

c.    grant any other relief deemed appropriate and equitable.

**Plaintiff demands trial by jury.**

Dated: December 10, 2017                              **Respectfully Submitted,**

/s/ Majdi Y. Hijazin
Majdi Y. Hijazin, *Of Counsel*
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: (630) 575-8181
Fax: (630) 575-8188
mhijazin@hijazinlaw.com