IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NATHANIEL PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17 C 8882 |
| | ) | |
| v. | ) | Honorable Ronald A. Guzman |
| | ) | |
| DOVENMUEHLE MORTGAGE, INC. and | ) | Magistrate Jeffrey T. Gilbert |
| NEIGHBORHOOD LENDING SERVICES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOVENMUEHLE MORTGAGE, INC.'S MOTION TO DISMISS COUNTS I, II, III AND V OF PLAINTIFF'S COMPLAINT PURSUANT TO RULE 12(b)(6)**

---

Isaac J. Colunga
Kelsey N. Weyhing
**ICE MILLER LLP**
200 West Madison Street
Suite 3500
Chicago, IL 60606
(312) 726-1567
isaac.colunga@icemiller.com
kelsey.weyhing@icemiller.com

*Counsel for Dovenmuehle Mortgage, Inc.*

## INTRODUCTION

This case arises out of two loans that Neighborhood Lending Services, Inc. ("NLS") extended to Nathaniel Phillips ("Plaintiff") in 2006 and 2007. The loans were secured by mortgages on certain real estate located at 10339 South Bensley, Chicago, Illinois 60617. Plaintiff defaulted on the loans, and after the Circuit Court of Cook County entered an order of foreclosure, Plaintiff entered into two Loan Modification Agreements with NLS. The Loan Modification Agreements provided for new principle, interest and other payments and allowed Plaintiff to stay in his home under the new arrangement.

Dovenmuehle Mortgage, Inc. ("DMI") was not a party to the Loan Modification Agreements between Plaintiff and NLS. DMI worked as a subservicer for NLS. By way of background, a "loan servicer" or "subservicer," like DMI, is an outside company that a lender may hire to service a mortgage or loan on the lender's behalf. This may involve sending bills, processing payments, communicating with the borrower, administering escrow accounts and other tasks necessary to service a loan.

Through this lawsuit Plaintiff has taken issue with how NLS and DMI serviced the two Loan Modification Agreements. Plaintiff has alleged claims for breach of the Loan Modification Agreements (Counts I and II), violations of the Real Estate Settlement Procedures Act ("RESPA") (Count III), a violation of the Telephone Consumer Protection Act ("TCPA") (Count IV), and a vague violation of the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") (Count V). Although DMI disputes the allegations, it concedes that Plaintiff has alleged enough to state a claim in Count IV, and thus DMI has filed an Answer and Affirmative Defenses as to the allegations contained in Count IV. The remaining counts are totally deficient and fail to state a claim as a matter of law.

## BACKGROUND ALLEGATIONS

This case arises from two loans that NLS extended to Plaintiff, which Plaintiff secured by executing two mortgages on his home in favor of NLS. The "First Mortgage," as Plaintiff calls it, was in the amount of $106,041.00, with monthly payments of $704.07 plus escrow. (Compl. ¶ 11). Plaintiff also executed a promissory note for $49,000, with deferred payments on the note. (Compl. ¶ 12). A few months later, Plaintiff executed a "Second Mortgage" to secure a promissory note in the amount of $15,906.00, with monthly payments in the amount of $117.47. (Compl. ¶ 13).

Plaintiff further alleges that in January 2010, NLS and DMI stated that the First Mortgage was in default. He is then very careful to say that he "disputed the loan was in default," (Compl. ¶ 15), although he admits that NLS initiated foreclosure proceedings against him in the Circuit Court of Cook County as a result of his failure to pay the required monthly installments. (Compl. ¶ 24). DMI was not a party to the foreclosure proceedings. Plaintiff does not provide any detail or attach any pleadings with respect to the foreclosure action, and thus DMI has done so here.[1]

NLS initiated the foreclosure action on July 13, 2011, and it went on for almost a year. (**Exhibit 1**, Complaint to Foreclose). By May 2011, NLS had filed a motion for judgment of foreclosure, attaching all required affidavits showing all amounts that Plaintiff still owed on the loans. (**Exhibit 2**, Motion for Judgment of Foreclosure and attendant documents). Eventually, on November 29, 2012 the Circuit Court of Cook County entered a judgment of foreclosure, finding that Plaintiff had failed to make the required payments and that his loans were in default.

---

[1] The Court may take judicial notice of pleadings in the public record and may consider them when deciding the motion to dismiss. *Anderson v. Simon*, 217 F.3d 472, 474 (7th Cir. 2000) ("a court may take juridical notice of matters of public record when ruling on a motion to dismiss").

(**Exhibit 3**, Judgment of Foreclosure and attendant documents). At all times prior to the foreclosure, NLS acted pursuant to its rights under the mortgages (*see* **Ex. 1**, mortgage terms) that Plaintiff executed in favor of NLS, which allowed NLS to collect on the loan or even initiate foreclosure proceedings if necessary.

In December, 2012, Plaintiff entered a Loan Modification Agreement for the First Mortgage, with a new principle balance and new payment amounts. (Compl. ¶ 27). A few days later, Plaintiff entered a second Loan Modification Agreement for the Second Mortgage, again with a new principle balance and new payment amounts. (Compl. ¶ 28). The Loan Modification Agreements were between Plaintiff and NLS. (Compl., Ex. A and B). DMI was not a party to the Loan Modification Agreements. (*Id.*). The Loan Modification Agreements did not state who or how the loans would be serviced. (*Id.*). As a result of the Loan Modification Agreements, NLS dismissed the foreclosure action against Plaintiff. (Compl. ¶ 29. *See also* **Exhibit 4**, Motion to Vacate Foreclosure).

From there, Plaintiff alleges that on February 1, 2013 NLS and DMI sent a delinquent notice to Plaintiff related to the first Loan Modification Agreement. (Compl. ¶ 31). Plaintiff next recounts Defendants' attempts to remind him that his account is in default throughout April and May of 2013. (Compl. ¶¶ 32-37). He claims to have made all payments under the Loan Modification Agreements[2] and then alleges that he "disputed the Defendants' notices that" he was in default. (Compl. ¶ 41).

---

[2] There are several instances in which DMI specifically refutes the allegations as stated, but of course understands that for purposes of this motion the Court must assume these allegations are true. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808 (7th Cir. 2016) ("When considering a motion to dismiss, the district court ordinarily assumes the truth of all well-pleaded allegations in the plaintiff's complaint.").

Plaintiff further alleges that Defendants "misapplied" Plaintiff's payments, (Compl. ¶ 43), although he does not allege how that could have happened. He does not allege how he submitted payments, how Defendants applied the payments or whether he directed funds to a particular account. Plaintiff simply jumps to the conclusion and speculates that Defendants misapplied payments. It's a mystery how that happened. Plaintiff next makes several allegations related to the letters and requests that he and his lawyers sent to DMI, and blindly concludes, for the most part, that DMI failed to respond. This is blatantly false, although DMI recognizes that at this point it is stuck with Plaintiff's version of events.

Before stating his claims, Plaintiff includes a standalone section of the complaint titled, "DAMAGES." In this section Plaintiff alleges that he sought medical treatment, that he was prescribed medication and that his hypertension was "exacerbated" as a result of Defendants' conduct. (Compl. ¶¶ 110-112). Basically he alleges a laundry list of supposed injuries, (Compl. ¶¶ 109-115), without attributing any of the purported injuries to any particular claim or statutory violation. The injuries are simply lumped together and incorporated into each of his claims. The reader has no idea which violation caused the supposed injuries.

## STANDARD OF REVIEW

To withstand a motion to dismiss a complaint must contain allegations that state a plausible claim for relief. *McCauley v. City of Chi.*, 671 F.3d 611, 615 (7th Cir. 2011). Federal Rule 8 "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Pleadings that offer labels and conclusions and simply recite the elements will not suffice; "nor does a complaint suffice if it enters naked assertions devoid of factual enhancement." *Id.* Plaintiffs must "provide some specific facts to support the legal claims asserted in the complaint. *McCauley*, 671 F.3d at 616.

In evaluating a motion to dismiss, courts consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 (7th Cir. 2012). The Seventh Circuit has confirmed that "where an exhibit conflicts with the allegations of the complaint, the exhibit typically controls." *E.g.*, *Massey v. Merrill Lynch & Co.*, 464 F.3d 642, 645 (7th Cir. 2006).

## ARGUMENT

I.  **Counts I and II: Plaintiff's breach of contract claims should be dismissed as to DMI because DMI was not a party to the Loan Modification Agreements.**

For Counts I and II, Plaintiff alleges that both DMI and NLS breached the two Loan Modification Agreements that he executed in December 2012. These are the only agreements that Plaintiff attached to his complaint. (Compl., Ex. A, B). The problem, however, is that DMI was not a party to the Loan Modification Agreements. DMI did not execute the Loan Modification Agreements, and DMI is not mentioned anywhere in the agreements. This alone justifies the dismissal of Counts I and II as to DMI.

Courts routinely hold that a loan servicer has no contractual relationship or privity with a borrower, and therefore cannot be sued for breach of contract:

- *Timlick v. Bank of Am.*, 2017 WL 176218, at *2 (W.D. Wash. Jan. 17, 2017) (holding that loan servicer could not be sued for breach of contract where the plaintiff failed to allege a contract with defendant);

- *Hanson v. Amerihome Morg. Co.*, 2017 WL 6626328, at *6 (S.D. W.Va. Dec. 28, 2017) (dismissing contract claims against loan servicer because servicer was not a party to the loan agreement);

- *Bank of America v. Zaskey*, 2016 WL 2897410, at *6-7 (S.D. Fla. May 18, 2016) (granting motion to dismiss against servicer because it did not contract with nor was it in privity with borrower);

- *Edwards v. Ocwen Loan Servicing, LLC*, 2014 WL 861996, at *3 (D.D.C. Mar. 5, 2014) ("Judges around the country ... have held that a loan servicer, as a lender's

agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract.");

- *Petty v. Countrywide Home Loans, Inc.*, 2013 WL 1837932, at *10 (S.D. W.Va. May 1, 2013) (granting motion to dismiss because loan servicer has no contractual relationship or privity with a borrower);

- *Robinson v. Deutsche BankNat'l Trust Co.*, 932 F.Supp.2d 95, 109 (D.D.C. 2013) (same);

- *Walker v. Federal Nat'l Mortg. Assoc.*, 2014 WL 12069852, at *6 (N.D. Ga. Dec. 19, 2014) (dismissing contract claims against servicer because it cannot be liable for breach of contract where it was not a party to note);

- *Kapsis v. American Home Mortg. Servicing Inc.* 923 F. Supp. 2d 430, 451 (E.D.N.Y. 2013) (dismissing contract claim against servicer where servicer was not a party to agreement and not in privity with plaintiff);

- *Pereira v. Ocwen Loan Servicing, LLC*, 2012 WL 1381193, at *3 (E.D.N.Y. Apr. 18, 2012) (dismissing breach of contract claim against servicer);

- *Howard v. First Horizon Home Loan Corp.*, 2013 WL 3146792, at *2 (N.D. Cal. June 18, 2013) (dismissing contract claims against servicer because it was not a party to deed of trust);

- *Johnson v. Affiliated Computer Servs., Inc.*, 2011 WL 4011429, *7 (N.D. Tex. Sept. 9, 2011) (dismissing breach of contract claim against loan servicer because it had no contract with plaintiff);

- *Walker v. Household Mortg. Servs., Inc.*, 2011 WL 13228406, at *1 (D. Ariz. Apr. 8, 2011) (dismissing mortgage servicer as non-party to mortgage);

- *James v. Litton Loan Servicing, L.P.*, 2011 WL 59737, at *11 (M.D. Ga. Jan. 4, 2011) (granting motion to dismiss claims against servicer because it wasn't a party to loan agreement);

- *Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 941-42 (S.D. Ohio 2010) (dismissing servicer of note and mortgage because it was not a party to the note or mortgage and not in privity with plaintiff);

- *Glover v. Udren*, 2010 WL 5829248, at *3 (W.D. Pa. Oct. 21, 2010) (finding servicer cannot be liable for breaches arising under original mortgage and note because servicer was not a party to those documents);

- *Edmond v. Am. Educ. Servs.*, 2010 WL 4269129, at *2 (D.D.C. Oct. 28, 2010) (dismissing contract claims against servicer, which was not party to loan agreements);

- *Kehoe v. Aurora Loan Servs. LLC*, 2010 WL 4286331, *8 (D. Nev. Oct. 20, 2010) (noting a loan servicer is not a party to a deed of trust and servicing a loan does not create contractual privity with borrowers);

6

- *Connors v. Home Loan Corp.*, 2009 WL 1615989, at *6 (S.D. Cal. June 9, 2009) (same).

All of these cases are factually similar and persuasive. Here, like the plaintiffs in the cases above, Plaintiff has failed to allege anything that would raise a plausible inference that DMI was a party to the Loan Modification Agreements, or that DMI somehow was in contractual privity with Plaintiff.

And, despite what Plaintiff may believe, the fact that DMI serviced Plaintiff's loans, (Compl. ¶ 117), is not enough to create duties and obligations for DMI under contracts to which it was not a party. Again, DMI is not even mentioned in the Loan Modification Agreements. In fact, the Loan Modification Agreements are silent as to DMI's relationship with NLS, and they are silent as to who will service Plaintiff's loans or how the loans will be serviced. Put simply, the Loan Modification Agreements do not deal with servicing, and Plaintiff does not allege what sort of duties DMI would have to Plaintiff under the Loan Modification Agreements, where again DMI is not a party. Under Illinois law, DMI cannot breach contracts to which it is not a party. Counts I and II should be dismissed as to DMI.

DMI understands that there are two cases holding that a loan servicer could be liable for breach of contract under the right conditions. Those two cases are not binding on this Court, of course,[3] and both are easily distinguishable. The district court in *Bonfiglio v. Citifinancial Servicing, LLC* recognized that it was common to dismiss contract claims against servicers, but

---

[3] *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."); *TMF Tool Co., Inc. v. Muller*, 913 F.2d 1185, 1191 (7th Cir. 1990) (a district court decision "is not binding on the circuit, or even on other district judges in the same district"); *Co Star Realty Info., Inc. v. CIVIX-DDI, LLC*, 2013 WL 5346440, at *4 (N.D. Ill. Sep. 23, 2013) ("District court opinions are not binding authority even in the district in which they are rendered.").

the facts before it showed a question existed as to whether the servicer was a party to a deferment agreement with the borrower. 2015 WL 5612194, at *7 (N.D. Ill. Sept. 23, 2015). This question as to the deferment agreement kept the court from dismissing the borrower's contract claims against the servicer. This unique situation related to a deferment agreement does not exist in this case. There are no allegations suggesting that DMI had anything to do with a deferment agreement that Plaintiff executed. DMI and Plaintiff are not in contractual privity.

A similar thing happened in *Khan v. OneWest Bank*, where the district court allowed plaintiff's contract claims to survive because the complaint made it sound as though the servicer offered the loan agreement. 2017 WL 1344535, at *6 (N.D. Ill. Apr. 12, 2017). Here, there is nothing like that in Plaintiff's complaint. Even under the most liberal pleading standards, there are no allegations that would connect DMI to the Loan Modification Agreements. Accordingly, the contract claims should be dismissed with prejudice as to DMI.

II.    **Count III: Plaintiff's RESPA claim should be dismissed because Plaintiff failed to plead actual damages as a result of the RESPA violations, and because Plaintiff failed to properly plead a pattern and practice.**

Plaintiff alleges that DMI violated RESPA because it failed to properly respond to Plaintiff's requests for information and notices of error. RESPA places requirements on servicers of federally related mortgage loans when they receive a qualified written request from a borrower. 12 U.S.C. § 2605 *et seq.* For instance, a servicer must provide a written response acknowledging the receipt of a qualified written request within 20 days of receiving such a request, 12 U.S.C. § 2605(e)(1)(A), and a servicer then has to do one of three things within 60 days of the request: (1) correct the account; (2) investigate and explain why the account is correct; or (3) investigate and explain why the information requested is unavailable. *Johnstone v. Bank of Am., N.A.,* 173 F. Supp. 2d 809, 812 (N.D. Ill. 2001) (citing 12 U.S.C. § 2605(e)(2)).

There are other requirements, too, although we need not discuss them as this motion is not focused on the factual deficiencies of Plaintiff's claims. Suffice it to say that Plaintiff believes that DMI did not respond to his requests for information or notices of error in compliance with RESPA.

### A. Plaintiff's RESPA claim fails for lack of actual damages.

Putting aside the fact that DMI did not violate RESPA, one of the more glaring problems with Plaintiff's RESPA count is that he fails to plead any damages that specifically resulted from the purported RESPA violations that occurred. In a separate section of his complaint, Plaintiff alleges an assortment of so-called "Damages," but he doesn't connect any of those supposed "Damages" to the specific RESPA violations in Count III. Instead, the "Damages" are simply lumped together, leaving Defendants with no idea which violations caused what damages. This omission is fatal to his claim.

RESPA provides that a servicer is liable for "any actual damages to the borrower as a result of the failure" to comply with RESPA's provisions. 12 U.S.C. § 2605(f)(1)(A). Federal courts have interpreted this to mean that to recover under RESPA, a plaintiff must allege more than a violation of the statute. A plaintiff must allege "actual, demonstrable damages" that occurred "as a result of" the specific violations at issue. *Goldbeck v. Johnson Blumberg & Assocs, LLC*, 2017 WL 3070868, at *10 (July 19, 2017) (dismissing RESPA claim for failure to allege actual damages). "Failure to plead actual damages is fatal to a RESPA claim." *Lesniak v. Bank of Am., N.A.*, 169 F. Supp. 3d 766, 773 (N.D. Ill. 2015) (dismissing RESPA claim because plaintiff failed to link damages with alleged violation). Plaintiff hasn't met this standard.

First of all, Plaintiff's RESPA claim does not allege specific damages that resulted from the violations that he pleads. (Compl. ¶¶ 126-144). In fact, we have no idea upon looking at the

complaint what sort of damages Plaintiff suffered as a result of the failure to receive responses to his requests for information, as his RESPA claim alleges. This alone is insufficient and requires dismissal. *See, e.g., Konieczka v. Wachovia Mortg. Corp.*, 2012 WL 1049910, at *4 (N.D. Ill. Mar. 28, 2012) ("Because Plaintiffs have failed to plead any actual damages as required under RESPA, they have failed to adequately plead a claim for violation of § 2605(e)(2) upon which relief can be granted."); *Lane v. Vitec Real Estate Indus. Grp.*, 713 F. Supp. 2d 1092, 1101 (E.D. Cal. 2010).

Second, Plaintiff cannot rely on emotional damages, by themselves, to state a claim under RESPA. Plaintiff's RESPA claim incorporates by reference the "Damages" allegations contained in Paragraphs 110 through 115 of his complaint. (Compl. ¶ 126). Those "Damages" allegations consist primarily of emotional damages, such as "hypertension," "stress," and "anxiety." (Compl. ¶¶ 112, 115). These damages are insufficient.

While it's true that a plaintiff may rely on emotional damages in certain cases, to do so a Plaintiff is required to first show that he suffered a financial loss. *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 881 (7th Cir. 2001) (stating that a plaintiff must first show that she had suffered a financial loss, before being permitted to piggyback a claim for damages for incidental emotional distress); *Goldbeck*, 2017 WL 3070868, at *11 (dismissing RESPA claim because plaintiff did "not claim that he suffered any economic injury" or allege "how [the RESPA] delay caused actionable emotional distress."). Here, there are **absolutely zero** allegations of a financial loss that occurred as a result of the supposed RESPA violations that then caused emotional distress.

The closest thing to a financial loss is Plaintiff's allegation that his account was accelerated and in foreclosure status. (Compl. ¶ 114). But those supposed losses have nothing to

do with RESPA. Rather, Plaintiff admits that those losses occurred because NLS and DMI deemed his account as "delinquent" and refused payments, (*id.*), which goes to the status of his account, not to the failure to respond to his requests in violation of RESPA. Whatever labels were assigned to his accounts have nothing to do with DMI's alleged RESPA violations. Count III should be dismissed for this reason as well. *Goldbeck*, 2017 WL 3070868, at *11 (dismissing RESPA claim because court did not know how the purported loss was connected to RESPA violation).

The other financial losses that Plaintiff alleges are also insufficient. He also alleges "[i]nterest, late fees, property inspection fees, foreclosure costs, and other fees that have been wrongfully added to Plaintiff's loan balance." (Compl. ¶ 115 v.). But those losses resulted from the default on his loans, not from any purported RESPA violation. Plaintiff's attempts to rely on such losses have been tried and rejected many times before. *Goldbeck*, 2017 WL 3070868, at *11 ("The economic injury that Plaintiff allegedly suffered (e.g. late charges, default fees, foreclosure-related costs, etc.) resulted from his default under his loan, not any purported RESPA violation."); *In re Holland,* 2008 WL 4809493, at *10 (Bankr. D.Mass. Oct. 30, 2008) (dismissing RESPA claim because alleging additional fees and interest accrual is not sufficient when those amounts are not quantified). As we can see, these types of financial losses are inadequate to state a claim under RESPA.

The same goes for unspecified "Certified mail expenses" and "attorney fees," (Compl. ¶¶ 115 xii-xiii), which are not quantified or expanded upon, nor are they connected to RESPA. Federal courts have rejected these types of allegations as well. *E.g.*, *Tanasi v. CitiMortgage, Inc.*, 2017 WL 2837477, at *25 (D. Conn. June 30, 2017) (holding that expenses of preparing an initial request for information cannot serve as the basis for actual damages); *Allen v. United Fin.*

11

*Mortgage Corp.,* 660 F. Supp. 2d 1089, 1097 (N.D.Cal.2009) (dismissing RESPA claim because "the requirement that plaintiffs plead pecuniary damage is not a mere pleading formality; it is a requirement that has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure of notice has caused them actual harm."). The Court should dismiss Count III with prejudice.

### B. Plaintiff's RESPA claim also fails to allege a pattern and practice.

To recover statutory damages under RESPA, a plaintiff must allege a "pattern and practice of noncompliance with the requirements under this section . . . ." 12 U.S.C. § 2605(f)(1)(B). Courts require allegations sufficient to show that a defendant's RESPA violations are a "standard and routine way of operating." *In re Maxwell,* 281 B.R. 101, 123 (Bankr. D. Mass. 2002). *Accord Renfroe v. Nationalstar Mortg., LLC,* 822 F.3d 1241, 1247 (11th Cir. 2016). Some courts even require allegations of violations involving other borrowers. *See Toone v. Wells Fargo Bank, NA,* 716 F.3d 516, 523 (10th Cir. 2013). Plaintiff includes none of these allegations.

Plaintiff has not alleged that DMI violates RESPA as part of its standard and routine way of doing business, nor does Plaintiff allege that DMI has violated RESPA with respect to other borrowers. Rather, Plaintiff pleads in conclusory fashion, and "upon information and belief," that Defendants' failure to comply with RESPA "is part of a pattern and practice of non-compliance." (Compl. ¶ 144). But there are no facts to support this legal conclusion. From the face of the complaint, there is nothing to suggest that violating RESPA is part of Defendants' standard and routine way of operating. Count III should be dismissed for this reason as well.

**III.     Count V: Plaintiff's ICFA claim should be dismissed because Plaintiff failed to allege ICFA's required elements for a claim based on deceptive acts, and failed to include allegations with the heightened level of specificity.**

Plaintiff also fails to state a claim for violation of ICFA because he fails to allege that DMI intended for Plaintiff to rely on the supposed unfair conduct, or that DMI's conduct caused Plaintiff actual harm. "In order to state an ICFA claim, a plaintiff must show: '(1) a deceptive or unfair act or promise by the defendant; (2) the defendant's intent that the plaintiff relies on the deceptive or unfair practice; and (3) that the unfair or deceptive practice occurred during a course of conduct involving trade or commerce.'" *Maxwell v. Sanofi-Aventis U.S. LLC*, 2016 WL 3633321, at *3 (N.D. Ill. July 6, 2016) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)). A private-party plaintiff also "must show that the defendant's violation of the act caused the plaintiff to suffer 'actual damage,'" *see* 815 ILCS 606/10a, meaning that the plaintiff's allegations must demonstrate that it suffered "actual pecuniary loss." *Am. Inter-Fid. Corp. v. M.L. Sullivan Ins. Agency, Inc.*, 2016 WL 3940092, at *4 (N.D. Ill. July 21, 2016).

In support of his ICFA claim, Plaintiff alleges two issues with how Defendants serviced his loans. First, he alleges that Defendants continued to treat Plaintiff's loans as if they were in default, when according to Plaintiff they were not. (Compl. ¶ 159). Second, he alleges that DMI continued to call him on his cell phone about his loans even after he demanded that it stop. (Compl. ¶ 160). Plaintiff then parrots the statute and alleges that these two issues "violate public policy" and are "oppressive, unethical, unfair and unscrupulous." (Compl. ¶ 159-161). As to his damages, he points to the general "Damages" section starting at Paragraph 109. (Compl. ¶ 162).

Missing from Plaintiff's complaint are plausible allegations going to Defendants' intent, to Plaintiff's reliance or to the pecuniary losses that Plaintiff suffered as a direct result of any alleged ICFA violations. In fact, Plaintiff's allegations in Count V do not address Defendants'

intent at all. Plaintiff nowhere alleges- let alone with sufficient particularity- that DMI intended Plaintiff to rely on any deceptive statement or unfair practice regarding the servicing of Plaintiff's loans. *See Eul v. Transworld Sys.*, 2017 WL 1178537, at *20 (N.D. Ill. Mar. 30, 2017) (finding that plaintiff's allegations "do not at all address Defendants' intent, and Plaintiffs identify no other allegations in the complaint that do"); *Garrett v. RentGrow, Inc.*, 2005 WL 1563162, at *4 (N.D. Ill. July 1, 2005) (even if a plaintiff's allegations meet the criteria of an unfair practice, the plaintiff "must still allege the second prong of an ICFA claim, intent"). Furthermore, Plaintiff's allegation that DMI violated ICFA because it treated Plaintiff's mortgage loan as if it were in default is identical to Plaintiff's breach of contract claim against DMI. (Compl. ¶ 159). Like in *W. Howard Corp. v. Indian Harbor Ins. Co.*, Plaintiff may not "shoehorn" its claims regarding Defendants' alleged conduct into fraud by making a conclusory allegation under the ICFA. 2011 WL 2582353, at *4–5 (N.D. Ill. June 29, 2011). In and of itself, Plaintiff's failure to allege DMI's intent that Plaintiff rely on its conduct is fatal to Plaintiff's ICFA claim.

Plaintiff also fails to allege that it suffered actual damages as the result of DMI's conduct. Central to Plaintiff's claim is his allegation that Defendants placed numerous phone calls to Plaintiff's cell phone despite his demand that Defendants stop doing so. Plaintiff again fails to provide any evidence that Defendants' conduct resulted in actual pecuniary harm. *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 739 (7th Cir. 2014) (finding that the plaintiff failed to show financial injury beyond "conclusory assertions" that he paid more than the actual damage of merchandise he received); *see also Kim v. Carter's Inc.*, 598 F.3d 362, 366 (7th Cir. 2010) (plaintiff's failure to plead actual damages resulted in dismissal of his ICFA claim). Further, Plaintiff's reliance on emotional damages in support his claims is insufficient to state a claim

under ICFA. *See Am. Inter-Fid. Corp. v. M.L. Sullivan Ins. Agency, Inc.*, 2016 WL 3940092, at *4 (N.D. Ill. July 21, 2016). The Court should dismiss Count V with prejudice because Plaintiff has failed to state with specificity that it suffered pecuniary harm due to DMI's conduct, as required by the ICFA.

<strong>CONCLUSION</strong>

Defendant DMI respectfully requests that the Court enter an order granting DMI's motion to dismiss Counts I, II, III and V of Plaintiff's complaint with prejudice, and that the Court grant DMI all other and further relief that the Court deems proper.

DATED: February 2, 2018          Respectfully submitted,

**DOVENMUEHLE MORTGAGE, INC.**

BY: ___/s/ Isaac J. Colunga_____
One of Its Attorneys

Isaac J. Colunga
Kelsey N. Weyhing
**ICE MILLER LLP**
200 West Madison Street
Suite 3500
Chicago, IL 60606
(312) 726-7157
isaac.colunga@icemiller.com
kelsey.weyhing@icemiller.com

*Counsel for Dovenmuehle Mortgage, Inc.*

15

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that on February 2, 2018, he caused the foregoing to be filed with the Clerk of the United States District Court for the Northern District of Illinois, and thus a copy of this pleading will be served on all counsel of record by the Clerk's ECF/CM system.

/s/   Isaac J. Colunga