## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NATHANIEL PHILLIPS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:17-cv-08882 |
| v. ) | |
| DOVENMUEHLE MORTGAGE, INC., and ) | Judge: Hon. Ronald A. Guzman |
| NEIGHBORHOOD LENDING SERVICES, INC., ) | Magistrate Judge: Hon. Jeffery T. Gilbert |
| Defendants ) | |

### NEIGHBORHOOD LENDING SERVICES, INC.'S ANSWER TO COMPLAINT

Now comes the Defendant, NEIGHBORHOOD LENDING SERVICES, INC. (hereinafter referred to as NLS) by its attorneys, Kropik Papuga & Shaw and in Answer to the Complaint filed herein by Plaintiff states as follows:

### NATURE OF THE ACTION

**1.** This is an action brought by a consumer seeking redress for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* (hereinafter "RESPA"), Breach of Contract, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.*, and the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "TCPA").

ANSWER: NLS admits the allegations of paragraph 1 of the Complaint.

**2.** All of the claims stated herein stem from the wrongful servicing and debt collection activities related to Plaintiff's mortgage loan.

ANSWER: NLS admits the allegations of paragraph 2 of the Complaint but denies the allegation of wrongful servicing and collection activities as they relate to NLS.

### JURISDICTION AND VENUE

**3.** Subject matter jurisdiction is conferred upon this Court by 12 U.S.C. § 2605, Title 11 of U.S.C., and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States.

1

ANSWER: NLS admits the allegations of paragraph 3 of the Complaint.

**4.** Supplemental jurisdiction exists over the breach of contract and Illinois Consumer Fraud and Deceptive Business Practices Act claim(s) under 28 U.S.C. § 1367.

ANSWER: NLS admits the allegations of paragraph 4 of the Complaint.

**5.** Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as both Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

ANSWER: NLS admits the allegations of paragraph 5 of the Complaint.

## PARTIES

**6.** Plaintiff is a consumer and a natural person over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

ANSWER: NLS admits the allegations of paragraph 6 of the Complaint.

**7.** Dovenmuehle is a foreign corporation formed under the laws of the State of Delaware. Dovenmuehle has a principal place of business located at 1 Corporate Drive, Suite 350, Lake Zurich, Illinois 60047. "Dovenmuehle is one of the leading mortgage subservicing companies in the country servicing loans on behalf of commercial banks, savings banks, credit unions, insurance companies, mortgage banking companies and state and local housing finance agencies nationwide," including NLS in the State of Illinois.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth paragraph 7 of Plaintiff's Complaint.

**8.** Dovenmuehle's "private label subservicing program" includes, among other services, the following:

- Monthly borrower billing with fully customized statements using the lender's name, logo, colors and monthly messaging capabilities;
- Payment processing including mail payments through multiple lockbox locations nationwide, telephone payments, on-line payments, branch payments and Western Union payments;
- Escrow administration including bill collection for property taxes, hazard insurance and flood insurance, bill payments, escrow analysis and annual escrow statements;
- Collections counseling, loss mitigation including HAMP modifications, and default administration;
- Credit bureau reporting and all IRS and borrower year-end reporting.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth paragraph 8 of Plaintiff's Complaint but NLS admits that Dovenmuehle acts as a subservicer for NLS and any servicing actions alleged in this Complaint such as processing payments, generating statements, sending notices, receiving communications from Plaintiff, collection and foreclosure matters were performed by Dovenmuehle.

**9.** NLS is a domestic not-for-profit corporation formed under the laws of the State of Illinois with its principal place of business located at 1279 North Milwaukee Avenue, 5th Floor, Chicago, Illinois 60622.

ANSWER: NLS admits the allegations of paragraph 9 of the Complaint.

**10.** At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendant and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of the other Defendant and thus, each of the acts and omissions complained of herein were made known to, and ratified by each Defendant.

3

ANSWER: NLS denies the allegations of paragraph 10 of the Complaint that alleged improper actions of Dovenmuehle were with the full knowledge and consent of NLS. NLS denies that Dovenmuehle was acting within the course and scope of any agency relationship that may have existed between NLS and Dovenmuehle at any time that any of the alleged improper acts of Dovenmuehle were performed. NLS denies that it ratified any of the acts and omissions performed by Dovenmuehle complained of in the Complaint.

## FACTS SUPPORTING CAUSES OF ACTION

**11.** On March 3, 2006, Plaintiff executed a mortgage in favor of NLS to secure promissory notes in the amounts of $106,041.00 ("Account 9067" or "First Mortgage") with monthly principal and interest installments of $704.07 (plus escrow) and a maturity date of April 1, 2036.

ANSWER: NLS admits that Plaintiff executed certain notes and mortgages in favor of NLS. The terms of the notes and mortgages speak for themselves. Said mortgage was recorded in the Recorder's Office of Cook county, Illinois on March 14, 2006 as document # 0607335380.

**12.** On March 3, 2006, Plaintiff executed a promissory note in the amount of $49,000.00 ("Deferred Note") $0.00 monthly payments pursuant to the terms of the Deferred Note and a maturity date of March 31, 2011.

ANSWER: NLS admits that Plaintiff executed certain notes and mortgages in favor of NLS. The terms of the notes and mortgages speak for themselves. Said note was secured by a mortgage recorded in the Recorder's Office of Cook County, Illinois on March14, 2006 as document # 0607335381.

4

**13.** On February 23, 2007, Plaintiff executed a mortgage in favor of NLS to secure a promissory note in the amount of $15,906.00 ("Account 2996" or "Second Mortgage"). The promissory note was payable in monthly installments of principal and interest in the amount of $117.47 with a maturity date of March 17, 2027.

ANSWER: NLS admits that Plaintiff executed certain notes and mortgages in favor of NLS. The terms of the notes and mortgages speak for themselves. Said mortgage was recorded in the Recorder's Office of Cook county, Illinois on April 18, 2007 as document # 0710801193.

**14.** At all times relevant, Plaintiff was the sole operator, possessor and subscriber of the cellular telephone number of XXX-XXX-6142 and therefore, was personally financially responsible for the cellular telephone equipment and services.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth paragraph 14 of Plaintiff's Complaint.

**15.** In January 2010, Defendants claimed Plaintiff's Account 9067 was in default for December 2009 and January 2010. Plaintiff disputed that the loan was in default and requested that Defendants send him detailed accountings pertaining to both Account 9067 and Account 2996 (collectively "subject loans").

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth paragraph 15 of Plaintiff's Complaint any such notices and any such communications would have been between Plaintiff and Dovenmuehle.

**16.** Defendants acknowledged receipt of Plaintiff's request, but failed to provide Plaintiff with the requested accountings.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 16 of Plaintiff's Complaint any such notices and any such communications would have been between Plaintiff and Dovenmuehle.

**17.** Defendants continued to send Plaintiff notices alleging Account 9067 was in default. Plaintiff continued to dispute the alleged default and made numerous requests for complete itemized accountings of the subject loans, but NLS ignored Plaintiff's numerous requests. ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 17 of Plaintiff's Complaint any such notices and any such communications would have been between Plaintiff and Dovenmuehle. NLS denies that it had actual knowledge of any such requests by Plaintiff and denies that it ignored any request of which it had actual knowledge.

**18.** In an attempt to save his home, Plaintiff applied for a loss mitigation workout in 2010 and on or about November 1, 2010, Plaintiff entered into a Loan Modification Agreement modifying Account 9067 with a modified principal balance of $106,163.10 at 2.000% interest and new monthly payments of $597.53 and an upfront cash payment of $697.53. ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 18 of Plaintiff's Complaint any such application would have been between Plaintiff and Dovenmuehle. NLS denies that it had knowledge of any Loan Modification being executed by NLS on or about November 1, 2010. No copy of the alleged Loan Modification is attached to Plaintiff's Complaint.

**19.** Despite the Loan Modification, Defendants continued to send Plaintiff dunning letters stating Account 9067 was in default when Plaintiff was, in fact, current with his mortgage payment. Plaintiff vigorously disputed the default status.

6

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 19 of Plaintiff's Complaint any such communications would have been between Plaintiff and Dovenmuehle.

**20.** On February 4, 2011, Plaintiff spoke with "Ms. Pat" in NLS's Mitigation Department regarding his request for a complete payment history. According to "Ms. Pat," she requested the complete payment history from Customer Service on December 30, 2010.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 20 of Plaintiff's Complaint any such communications would have been between Plaintiff and Dovenmuehle. On information and belief, "Ms. Pat" was an employee of Dovenmuehle.

**21.** On February 9, 2011, Plaintiff sent NLS a letter requesting that it justify placing Account 9067 in arrears and requesting a complete payment history.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 21 of Plaintiff's Complaint any such communications would have been between Plaintiff and Dovenmuehle.

**22.** In his February 9, 2011 letter, Plaintiff also asked that "all forthcoming correspondence be provided in writing until a level of trust is accepted by me as it relates to NLS."

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 21 of Plaintiff's Complaint any such communications would have been received and processed by Dovenmuehle.

**23.** On February 15, 2011, Plaintiff sent another letter to NLS disputing Defendants' position that Plaintiff's payments had not been made in a timely manner.

7

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 21 of Plaintiff's Complaint any such communications would have been received and processed by Dovenmuehle.

**24.** On July 13, 2011, NLS filed a Complaint to Foreclose Mortgage, Case No. 11 CH 24609 in the Circuit Court of Cook County, alleging "[T]he mortgagor has failed to pay the monthly installments due under the note and the loan is due for the November 1, 2010 payment. There remains an outstanding principal balance of $99,673.01 plus interest, attorney's fees, foreclosure costs, late charges, advances and expenses incurred by [NLS] due to the mortgagor's failure to make payments ("foreclosure action)."

ANSWER: NLS admits that a Complaint to Foreclose Mortgage was filed by NLS on July 1, 2011. The allegations of the Complaint to Foreclose Mortgage speak for themselves. NLS further states that the Court Docket indicates that Plaintiff filed an answer or otherwise actively participated in that proceeding. In that foreclosure, on November 29, 2012, Judge Darryl B. Simko entered Summary Judgment in favor of NLS; Judgment of Foreclosure and Sale, and an Order for Reformation of Mortgage.

**25.** Plaintiff applied for a loss mitigation workout in another attempt to save his home from foreclosure. NLS denied receiving all documents and despite Plaintiff resubmitting the documents several times, NLS denied Plaintiff's request for a loss mitigation workout on January 20, 2012, alleging Plaintiff had not submitted all documentation.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 25 of Plaintiff's Complaint any such communications would have been between Plaintiff and Dovenmuehle and processed by Dovenmuehle.

8

**26.** Plaintiff continued to dispute the default status of Account 9067 and submitted and resubmitted documentation in support of his request for a loss mitigation workout.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 26 of Plaintiff's Complaint any such communications would have been between Plaintiff and Dovenmuehle.

**27.** Finally, on or about December 1, 2012, Plaintiff was approved for and entered into a Loan Modification Agreement on Account 9067 with the following terms:

- New Principal Balance $126,019.87;

- Deferred Principal Balance of $26,346.86 (on which amount Plaintiff would not pay interest or make monthly payments);

- New Interest-Bearing Principal Balance $99,673.01;

- Years 1-3 (12/01/2012 – 12/01/2015) 2.000% interest with principal and interest payments of $445.76 (plus escrow), beginning 01/01/2013;

- Year 4 (12/01/2015 – 12/01/2016) 3.000% interest with principal and interest payments of $489.37 (plus escrow), beginning 01/01/2016;

- Years 5-24 (12/01/2016 – maturity, 04/01/2036) 4.000% interest with principal and interest payments of $533.33 (plus escrow), beginning 01/01/2017;

- Deferred Principal Balance, plus any other amounts owed, due at maturity.

*See **Exhibit A,*** attached hereto, a true copy of the loan modification agreement on Account 9067.

ANSWER: NLS admits that on December 20, 2012 Plaintiff signed and acknowledged a loan modification agreement. NLS did not execute that loan agreement until February 4, 2013. The terms of the Loan Modification Agreement speak for themselves. NLS denies the allegation in

9

the footnote that NLS wrongfully prosecuted the foreclosure action. The judgment of foreclosure was entered by the court over two months before NLS executed the agreement.

**28.** On or about December 14, 2012, Plaintiff was approved for and entered into a Loan Modification Agreement on Account 2996 with the following terms:

- Unpaid Principal Balance $11,908.44;

- 2.000% interest from 12/14/2012, with principal and interest payments of $80.09 beginning 01/14/2013;

- 3.000% interest from 12/14/2015, with principal and interest payments of $84.53 beginning 01/14/2016;

- 4.000% interest from 12/14/2016 until maturity (03/14/2026), with principal and interest payments of $88.73 beginning 01/14/2017.


*See **Exhibit B***, attached hereto, a true copy of the loan modification agreement on Account 2996. ANSWER: NLS admits that on December 20, 2012 Plaintiff signed and acknowledged a loan modification agreement. NLS did not execute that loan agreement until February 4, 2013. The terms of the Loan Modification Agreement speak for themselves.

**29.** On January 17, 2013, NLS dismissed the Foreclosure action.
ANSWER: NLS admits that on January 17, 2013 the foreclosure was dismissed.

**30.** Plaintiff made timely payments on the subject loans under the terms of the Loan Modification Agreements.
ANSWER: From information received from Dovenmuehle, NLS denies that Plaintiff made all payments that are due under the terms of the Loan Modification Agreements in a timely manner.

**31.** However, almost immediately after entering into the Loan Modification Agreements and following the dismissal of the Foreclosure action, on February 1, 2013, Defendants sent a Delinquent Notice to Plaintiff, regarding Account 9067, claiming the regular monthly payment in the amount of $662.35 due for 02/01/2013, plus late charges in the amount of $22.29.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 25 of Plaintiff's Complaint any such Notice would have been processed and sent by Dovenmuehle.

**32.** On March 1, 2013, Defendants sent a Final Notice to Plaintiff, claiming Account 9067 was two regular monthly payments past due, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 32 of Plaintiff's Complaint any such Notice would have been processed and sent by Dovenmuehle.

**33.** On April 3, 2013, Defendants sent a letter to Plaintiff stating Account 9067 was in default.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 33 of Plaintiff's Complaint any such letter would have been generated and sent by Dovenmuehle.

**34.** On May 5, 2013, Defendants sent Plaintiff a Notice of Intent to Foreclose.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 34 of Plaintiff's Complaint any such communications would have been between Plaintiff and Dovenmuehle.

11

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 34 of Plaintiff's Complaint any such letter would have been generated and sent by Dovenmuehle.

**35.** On May 15, 2013, Defendants claimed Plaintiff was three payments past due on Account 9067.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 35 of Plaintiff's Complaint any such communications would have been processed and made by Dovenmuehle.

**36.** On May 22, 2013, Defendants sent Plaintiff a Notice of Breach and Right to Cure Default, claiming Account 9067 was due for monthly payments from 03/01/2013 to 05/01/2013, plus late charges and other charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 36 of Plaintiff's Complaint any such Notice would have been generated and sent by Dovenmuehle.

**37.** On May 31, 2013, Defendants returned Plaintiff's payment dated 05/28/2013 in the amount of $677.77 claiming the amount due was $2,061.46.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 37 of Plaintiff's Complaint any such receipt of payment and return would have been processed, generated and sent by Dovenmuehle.

**38.** On or about September 1, 2013, Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 due for the 09/01/2013 payment, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 38 of Plaintiff's Complaint any such Notice was generated and sent by Dovenmuehle.

**39.** On or about October 1, 2013, Defendants sent Plaintiff another Delinquent Notice claiming Account 9067 due for the 10/01/2013 payment, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 39 of Plaintiff's Complaint any such Notice was generated and sent by Dovenmuehle.

**40.** Plaintiff had made all payments pursuant to the terms of the December 1, 2012 and December 14, 2012 Loan Modification Agreements and therefore, Plaintiff disputed Defendants' Notices that Account 9067 was in default.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 40 of Plaintiff's Complaint all payments that were received were received and processed by Dovenmuehle.

**41.** On or about August 14, 2014, Defendants sent Plaintiff a Delinquent Notice on *Account 2996*, claiming the Account was due for 08/14/2014, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 41 of Plaintiff's Complaint any such Notice was generated and sent by Dovenmuehle.

**42.** Plaintiff continued to make timely monthly payments on Accounts 9067 and 2996 and, in fact, paid additional amounts to principal on both Accounts.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 42 of Plaintiff's Complaint any receipts of such payments were received and accounted for by Dovenmuehle.

**43.** Defendants misapplied Plaintiff's payments for Account 9067 *to* Account 2996, causing Plaintiff's first mortgage (Account 9067) to reflect a delinquent status.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 43 of Plaintiff's Complaint any receipts of such payments were received and accounted for by Dovenmuehle.

**44**. On April 26, 2016, Defendants applied payments in the amounts of $660.24 and $84.53 to Account 2996. The total of these payments, $744.77, was the monthly payment amount due on Account 9067.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 44 of Plaintiff's Complaint any receipts of such payments were received and accounted for by Dovenmuehle.

**45**. The misapplication of the $744.77 payment caused Plaintiff's Account 9067 to be in a delinquent status.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 45 of Plaintiff's Complaint any receipts of such payments were received and accounted for by Dovenmuehle.

**46**. As payments were being misapplied, over the years, Defendants would call Plaintiff on his cellular phone and wrongfully demand payment on the subject loans.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 46 of Plaintiff's Complaint any such calls were made by Dovenmuehle.

**47**. For example, on October 3, 2016, Dovenmuehle, caused a call to be to be placed a to Plaintiff's cellular telephone number. During this call, "Adrian", Dovenmuehle's representative, demanded payment on Account 9067.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 47 of Plaintiff's Complaint any such calls were made by Dovenmuehle.

14

**48**. During the October 3, 2016 telephone call, Plaintiff asked that Defendants communicate with him in writing *only*.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 48 of Plaintiff's Complaint any such calls were made by Dovenmuehle and any requests made by Plaintiff were received by Dovenmuehle.

**49**. On or about October 11, 2016, Defendants sent Plaintiff a Delinquent Notice on Account 9067, claiming the Account was due for 10/01/2016, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 49 of Plaintiff's Complaint any such notices were generated and sent by Dovenmuehle.

**50**. On October 24, 2016, Dovenmuehle, using NLS's name, logo and letterhead, acknowledged receipt of Plaintiff's inquiry regarding funds posted to Plaintiff's Account 2996 stating: "We are pleased to advise you that the adjustment(s) you requested are completed." *See Exhibit C*, attached hereto, true copy of October 24, 2016 response from Dovenmuehle.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 50 of Plaintiff's Complaint any such acknowledgements were generated and sent by Dovenmuehle.

**51**. On October 28, 2016, Dovenmuehle sent an acknowledgment regarding Plaintiff's inquiry as to Account 9067, stating that the inquiry had been referred to the appropriate area for review and "We will make every effort to provide a response to your inquiry as promptly as possible. In any event, we will do so within the time limit required by law." Dovenmuehle made no further response to Plaintiff's inquiry regarding Account 9067. *See Exhibit D*, attached hereto, true copy of October 28, 2016 acknowledgment from Dovenmuehle.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 51 of Plaintiff's Complaint any such notices or acknowledgements were generated and sent by Dovenmuehle.

**52**. On November 11, 2016, Defendants' monthly statement for Account 9067 claimed the Account was past due for one month, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 52 of Plaintiff's Complaint any such statement was generated and sent by Dovenmuehle.

**53**. On or about November 14, 2016, Defendants sent Plaintiff a Delinquent Notice on Account 9067, claiming the Account was due for the 11/01/2016 payment, plus accrued late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 53 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

**54**. NLS's November 16, 2016 monthly statement for Account 2996 indicated that the loan was due for the *03/14/2017* payment.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 54 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

**55**. On December 5, 2016, Dovenmuehle sent a second acknowledgment regarding Plaintiff's inquiry regarding funds posted to Plaintiff's Account 9067, stating that it needed an additional 15 days to respond to the inquiry. "We will respond no later than 1/4/17." To date, Defendants have never responded to Plaintiff's inquiry. *See Exhibit E,* attached hereto, true copy of December 5, 2016 acknowledgment from Dovenmuehle.

16

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 55 of Plaintiff's Complaint any such acknowledgement and notice was generated and sent by Dovenmuehle.

**56**. Defendants' December 12, 2016 monthly statement for Account 9067 claimed the Account was one month overdue.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 56 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

**57**. On or about December 12, 2016, Defendants sent Plaintiff a Delinquent Notice for Account 9067, claiming the Account was due for the 12/12/2016 payment, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 57 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

**58**. On December 13, 2016, Defendants' representative called Plaintiff's cellular telephone number. Plaintiff again demanded that Defendants stop calling his cellular telephone.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 58 of Plaintiff's Complaint any such communication was with Dovenmuehle.

**59**. Dovenmuehle, Servicer for NLS, reported the following information on the December 31, 2016 mortgage interest statements (Form 1098):

**Account 9067**:

(Beginning Principal Balance per 2015 Form 1098) $111,226.58

Ending Principal Balance $108,013.85

Principal Paid $3,212.73


**Account 2996:**

(Beginning Principal Balance per 2015 Form 1098) $8,467.80

Ending Principal Balance $6,073.09

Principal Paid $2,394.71

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 59 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

**60**. On January 9, 2017, a payment on Account 9067 in the amount of $820.77 cleared Plaintiff's checking account.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 60.

**61**. On January 10, 2017, Defendants applied payments in the amounts of $730.12 and $90.65 (totaling $820.77) *to Account 2996.*

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 61 of Plaintiff's Complaint any such payments were received and applied by Dovenmuehle.

**62**. Defendants' misapplication of the January payment caused Plaintiff's Account 9067 to be in a delinquent status.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 62 of Plaintiff's Complaint any such application of payment was done by Dovenmuehle.

**63**. Defendants' January 11, 2017 monthly statement for Account 9067 claimed the Account was one month overdue.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 63 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

18

**64**. On or about January 11, 2017, Defendants also sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the 01/01/2017 regular monthly payment in the amount of $814.49.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 64 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

**65**. On February 1, 2017, Defendants sent Plaintiff a Final Notice claiming Account 9067 was due for two regular monthly payments, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 65 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

**66**. On February 7, 2017, Defendants posted Plaintiff's payment in the amount of $814.77 to Account 9067 for the *January 2017* due date.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 66 of Plaintiff's Complaint any such posting was done by Dovenmuehle.

**67**. On February 10, 2017, Plaintiff sent Dovenmuehle a Notice of Error ("NOE") pursuant to 12 C.F.R. § 1024.35 and Request for Information ("RFI") pursuant to 12 C.F.R. § 1024.36. *See **Exhibit F***, attached hereto, true copy of Plaintiff's February 10, 2017 NOE pursuant to 12 C.F.R. § 1024.35 and Request for Information pursuant to 12 C.F.R. § 1024.36.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 67 of Plaintiff's Complaint any such notice was sent to Dovenmuehle.

**68**. The Plaintiff's NOE asserted that Dovenmuehle had reported derogatory and inaccurate information and statements regarding the above-referenced mortgage loan – namely, "maximum delinquency of 120 [days] in 09/2010 for $4,616 and in 12/2012 for $23,412."

19

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 68 of Plaintiff's Complaint any such notice was sent to Dovenmuehle.

**69**. Plaintiff's RFI pursuant to 12 C.F.R. § 1024.36 specifically requested:

1) An exact reproduction of the life of loan mortgage transactional history for this loan from the contract system of record from your electronic software program for this loan.
   For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transactional history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

2) Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan for the time period from January 10, 2014 to the present. *(Please Note: Since you have not responded to the Borrower's RFI, we amend this request to include the time period from January 1, 2013 to the present.)*

3) Copies of any and all mortgage statements for the above-referenced mortgage loan for the time period of January 1, 2013, to the present.

4) A detailed copy of your last three (3) analyses of the escrow account of the mortgage.
   *See **Exhibit F.***

   ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 69 of Plaintiff's Complaint any such notice was sent to Dovenmuehle.

**70**. On February 10, 2017, Plaintiff sent Dovenmuehle an RFI pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) specifically requesting:

1) The identity of and address for the current owner of the above-referenced mortgage loan.

2) The identity of and address for the master servicer of the above-referenced mortgage loan.

3) The identity of and address for the current servicer of the above-referenced mortgage loan.

*See Exhibit G*, attached hereto, true copy of Plaintiff's February 10, 2017 RFI pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2).

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 70 of Plaintiff's Complaint any such notice was sent to Dovenmuehle.

**71**. On February 10, 2017, Plaintiff sent Dovenmuehle an RFI pursuant to 12 C.F.R. § 1026.36(c)(3) specifically requesting a payoff statement related to Account 9067. *See Exhibit H,* attached hereto, true copy of Plaintiff's February 10, 2017 RFI pursuant to 12 C.F.R. § 1026.36(c)(3).

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 71 of Plaintiff's Complaint any such notice was sent to Dovenmuehle.

**72**. On or about February 13, 2017, Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the 02/01/2017 payment, plus accrued late charges of $106.03.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 72 of Plaintiff's Complaint any such notice was generated and sent by Dovenmuehle.

**73**. Also on February 13, 2017, Defendants' representative called Plaintiff's cellular telephone number and Plaintiff again demanded that Defendants stop calling his cellular telephone.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 73 of Plaintiff's Complaint any such call would have been made by Dovenmuehle.

74. On February 27, 2017, Dovenmuehle acknowledged receipt of the Plaintiff's February 10, 2017 inquiry regarding Account 9067. Dovenmuehle requested additional time to respond because "we have not completed our investigation of the error(s) identified in your correspondence." Dovenmuehle stated it would respond no later than 3/24/17. *See **Exhibit I,*** attached hereto, true copy of Dovenmuehle's February 27, 2017 letter acknowledging receipt of Plaintiff's inquiry.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 74 of Plaintiff's Complaint any such acknowledgements, requests and statements were made by Dovenmuehle.

75. On or about March 13, 2017, Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the March 1, 2017 payment, plus accrued late charges of $132.70.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 75 of Plaintiff's Complaint any such notice would have been generated and sent by Dovenmuehle.

76. On April 4, 2017, Defendants sent Plaintiff a Final Notice claiming Account 9067 was due for two regular monthly payments, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 75 of Plaintiff's Complaint any such notice would have been generated and sent by Dovenmuehle.

77. Defendants' April 14, 2017 monthly statement for Account 9067 claimed the Account was one month overdue, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 77 of Plaintiff's Complaint any such statement was generated and given by Dovenmuehle.

**78**. Defendants' May 2, 2017 monthly statement for Account 9067 claimed the Account was one month overdue, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 78 of Plaintiff's Complaint any such statement was generated and given by Dovenmuehle.

**79**. On June 2, 2017, Plaintiff made a payment to Defendants in the amount of $900.77, to be applied to Account 9067.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 79 of Plaintiff's Complaint any such payment, if made, would have been received and applied by Dovenmuehle.

**80**. Defendants did not apply the $900.77 payment to Account 9067.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 80 of Plaintiff's Complaint any such payment, if made, would have been received and applied by Dovenmuehle.

**81**. On June 5, 2017, Defendants erroneously applied the $900.77 payment to Account 2996 as a "principal payment."

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 81 of Plaintiff's Complaint any such payment, if made, would have been received and applied by Dovenmuehle.

**82**. On June 6, 2017, Defendants' representative called Plaintiff's cellular telephone number regarding an account in the name of "Henry or Victoria Milton."

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 82 of Plaintiff's Complaint any such call would have been made by Dovenmuehle.

**83**. Defendants' June 12, 2017 monthly statement for Account 9067 claimed the Account was two months overdue, plus late charges.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 83 of Plaintiff's Complaint any such statement was generated and given by Dovenmuehle.

**84**. Defendants' July 5, 2017 monthly statement for Account 9067 claimed the Account remained two months overdue, plus assessed late charges and fees for property inspection.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 84 of Plaintiff's Complaint any such statement was generated and given by Dovenmuehle.

**85**. On July 20, 2017, Defendants sent Plaintiff, via certified mail, a Notice of Breach and Right to Cure Default, stating "the nature of your default is the failure to make the monthly mortgage payment(s) from June 1, 2017 to July 1, 2017. Late charges and other charges have also accrued in the amount of $253.38. The total amount past due now required to cure this default is $1,625.06" on or before August 29, 2017. Plaintiff's "failure to cure the default on or before August 29, 1027, may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding, and sale of the Property."

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 85 of Plaintiff's Complaint any such Notice would have been generated and sent by Dovenmuehle.

**86**. Defendants' August 3, 2017 and August 11, 2017 monthly statements for Account 9067 claimed the Account was three months overdue, plus late charges and property inspection fees.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 86 of Plaintiff's Complaint any such statement would have been generated and given by Dovenmuehle.

**87**. On September 5, 2017, Plaintiff made payments to Account 9067 in the amount of $812.04 and to Account 2996 in the amount of $88.73.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 87 of Plaintiff's Complaint any such payment would have been received and processed by Dovenmuehle.

**88**. On September 5, 2017 Defendants applied the $88.73 payment to Account 2996.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 88 of Plaintiff's Complaint any such payment would have been received and processed by Dovenmuehle.

**89**. On September 5, 2017 Defendants erroneously applied the payment in the amount of $812.04 to Account 2996.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 89 of Plaintiff's Complaint any such payment would have been received and processed by Dovenmuehle.

**90**. Defendants failed to apply the $812.04 monthly payment to Account 9067.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 90 of Plaintiff's Complaint any such payment would have been received and processed by Dovenmuehle.

**91**. Defendants' September 11, 2017 monthly statement for Account 9067 claimed the Account was due for 07/01/2017, 08/01/2017 and 09/01/2017 payments in the amount of $814.49 each, and the current payment due in the amount of $774.60, plus fees totaling $334.72.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 91 of Plaintiff's Complaint any such statement would have been generated and given by Dovenmuehle.

**92**. On September 11, 2017, Defendants sent Plaintiff a Notice of Acceleration, demanding the immediate payment of the total balance due in the amount of $104,789.03 (current principal balance of $78,462.03 and deferred principal balance of $26,327.00), plus interest, costs and fees on Account 9067.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 92 of Plaintiff's Complaint any such Notice would have been generated and sent by Dovenmuehle.

**93**. On October 4, 2017, Defendants rejected Plaintiff's payment to Account 9067 in the amount of $777.77 and returned the funds to Plaintiff on October 10, 2017.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 93 of Plaintiff's Complaint any such payment would have been received and processed or otherwise dealt with by Dovenmuehle.

**94**. On October 11, 2017, Defendants claimed Account 9067 was overdue for

07/01/2017, 08/01/2017, 09/01/2017 and 10/01/2017 payments, along with the current payment.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of

paragraph 94 of Plaintiff's Complaint any such claim would have been made by Dovenmuehle.

**95**. On October 17, 2017, Plaintiff made a payment to Account 2996 in the amount of

$90.77 payment which was *rejected* by Defendants on October 23, 2017.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of

paragraph 95 of Plaintiff's Complaint any such payment would have been received and

processed or otherwise dealt with by Dovenmuehle.

**96**. On October 30, 2017, Plaintiff made another payment in the amount of $181.54

representing two monthly payments to Account 2996. Defendants accepted these payments on

November 6, 2017.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of

paragraph 96 of Plaintiff's Complaint any such payment would have been received and

processed by Dovenmuehle.

**97**. Also, on or about October 30, 2017, Plaintiff made another payment in the amount of

$1,555.54 representing two monthly payments to Account 9067. Defendants *rejected* these

payments on November 6, 2017.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of

paragraph 97 of Plaintiff's Complaint any such payment would have been received and

processed or otherwise dealt with by Dovenmuehle.

**98**. Defendants continue to reject Plaintiff's mortgage loan payments to Account 9067,

refusing to properly and accurately apply the timely payments to Plaintiff's Account, and

assessing late charges and penalties for Defendants' failure to receive Plaintiff's payments that Defendants had, in fact, received, rejected, and returned.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 98 of Plaintiff's Complaint any such payments would have been received and processed or otherwise dealt with by Dovenmuehle.

**99**. Dovenmuehle refused to respond to Plaintiff's NOEs and RFIs regarding the status of the mortgage accounts and misapplication of payments. Fearful that he would lose his home to foreclosure, Plaintiff sought legal counsel with the Sulaiman Law Group, Ltd.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 99 of Plaintiff's Complaint.

**100**. On November 14, 2017, Plaintiff's attorneys sent the following NOEs and RFIs to Dovenmuehle which were delivered to Dovenmuehle on November 20, 2017:

1) Notice of Error pursuant to 12 C.F.R. § 1024.35 for Defendants' failure to respond to Plaintiff's February 10, 2017 Notice of Error and Requests for Information [*See Exhibit J*, attached hereto, true copy of NOE and RFI, certified mail tracking number 70140640000389013304];

2) Notice of Error pursuant to 12 C.F.R. § 1024.35 asserting Defendants' misapplication of Plaintiff's monthly payments and the assessment of late charges and other fees to Account 9067 since the December 1, 2012 Loan Modification Agreement [*See Exhibit K*, attached hereto, true copy of NOE, certified mail tracking number 70150640000389013311];

3) Request for Information pursuant to 12 C.F.R. § 1024.36 regarding Account 2996 [*See Exhibit L*, attached hereto, true copy of RFI, certified mail tracking number 70150640000389013328]; and

4) Request for Information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) regarding Account 2996 [*See Exhibit M*, attached hereto, true copy of RFI, certified tracking number 70150640000389013335].

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 100 of Plaintiff's Complaint, any such notices were sent to Dovenmuehle.

**101**. By letters dated November 20, 2017, Defendants acknowledged receipt of Plaintiff's "inquiry" regarding Account 9067 and the "inquiry" regarding Account 2996, each stating Dovenmuehle's effort to provide a response as promptly as possible and "in any event…within the time limit required by law." *See Exhibit N*, attached hereto, true copies of Dovenmuehle's letters dated November 20, 2017, acknowledging receipt of inquiries regarding Accounts 9067 and 2996.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 101 of Plaintiff's Complaint, any such acknowledgements and responses would have been generated and sent by Dovenmuehle.

**102**. By letter dated November 21, 2017 (received by Plaintiff's counsel on November 28, 2017), Defendants produced a mortgage loan transaction history (03/14/2007 to 11/03/2017) for Account 2996 in partial response to Plaintiff's November 14, 2017 Request for Information pursuant to 12 C.F.R. § 1024.36 regarding Account 2996. *See Exhibit O*, attached hereto, true copy of Defendants' letter dated November 21, 2017, in partial response to Plaintiff's November 14, 2017 RFI regarding Account 2996 (letter, only).

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 102 of Plaintiff's Complaint, any such notices and responses would have been generated and sent by Dovenmuehle.

**103**. By letter dated November 28, 2017 (received by Plaintiff's counsel on December 7, 2017), Defendants produced a payoff statement, mortgage loan transaction history (02/2015 to 10/11/ 2017), annual escrow analysis dated 08/21/2017, and 11/16/2017 mortgage statement in partial response to Plaintiff's November 14, 2017 RFIs and NOEs regarding Account 9067. *See Exhibit P*, attached hereto, true copy of Defendants' letter dated November 28, 2017, in partial response to Plaintiff's November 14, 2017 RFI regarding Account 9067 (letter, only).

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 103 of Plaintiff's Complaint, any such notices and responses would have been generated and sent by Dovenmuehle.

**104**. Defendants allege that they responded to Plaintiff's February 10, 2017 NOE and RFIs on March 1, 2017; however, Plaintiff never received the letter and enclosures purportedly sent on March 1, 2017. *See Exhibit Q*, attached hereto, true copy of Defendants' letter dated March 1, 2017, purportedly sent to Plaintiff in partial response to Plaintiff's February 10, 2017 NOE and RFIs regarding Account 9067 (letter, only).

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 104 of Plaintiff's Complaint, any such notices and responses would have been generated and sent by Dovenmuehle.

**105**. Furthermore, Defendants failed to conduct a reasonable investigation of Account 9067 and failed (a) to correct the errors or (b) to provide Plaintiff and Plaintiff's counsel with written notification that included a statement of the reason or reasons that Defendants found no error, in violation of 12 C.F.R. §§ 1024.35(e)(1)(i)(A)&(B).

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 105 of Plaintiff's Complaint, any such inquiry would have been done by Dovenmuehle and any notices would have been generated and sent by Dovenmuehle.

**106**. Defendants' mortgage loan transaction histories disclose misapplied payments to Account 2996 and to Account 9067, as well as escrow amounts and adjustments posted to the non-escrow Account 2996.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 106 of Plaintiff's Complaint, any such transaction histories were prepared by Dovenmuehle and any application of payments as set forth in those histories was made by Dovenmuehle.

**107**. Since Plaintiff's February 9, 2011 letter to NLS requesting that all communications from Defendants be in writing only, Plaintiff made several additional demands that all communications from Defendants be in writing and that Defendants cease calling his cellular telephone number.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 107 of Plaintiff's Complaint, any such letters and demands would have been received by Dovenmuehle.

**108**. Nevertheless, since Plaintiff's February 9, 2011 letter to NLS, Defendants have made hundreds of calls to Plaintiff's cellular phone without his consent. Between October 3, 2016 and November 20, 2017 alone, Defendants placed no fewer than 78 telephone calls to Plaintiff's cellular phone number without Plaintiff's consent. The harassing calls to Plaintiff's cellular phone continue today.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 108 of Plaintiff's Complaint, any such telephone calls would have been made by Dovenmuehle.

## DAMAGES

**109**. Since 2010, Plaintiff made numerous requests for Defendants to provide him with documentation regarding his mortgage allegedly being in arrears, but Defendants refused to provide any such documentation.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 109 of Plaintiff's Complaint, any such requests would have been received by Dovenmuehle and any response or lack of response was by the actions of Dovenmuehle.

**110**. In 2016, Plaintiff sought medical treatment for anxiety and depression directly caused by Defendants' conduct over the years.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 110 of Plaintiff's Complaint but denies that any anxiety and depression was caused by the actions of NLS.

**111**. Plaintiff was prescribed medication for anxiety and depression.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 111 of Plaintiff's Complaint.

**112**. Furthermore, Plaintiff suffers from hypertension that has been exacerbated by stress and anxiety caused by Defendants' conduct.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 112 of Plaintiff's Complaint but denies that any hypertension was caused by the actions of NLS.

32

**113.** In 2016, Plaintiff's medication dosage was doubled to combat the hypertension caused by and further exacerbated by Defendants' conduct.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 113 of Plaintiff's Complaint but denies that any hypertension was caused by the actions of NLS.

**114.** Defendants have continued to erroneously deem Plaintiff's Account 9067 to be seriously delinquent and by refusing payments beginning in October 2017, Defendants have forced Plaintiff's Account 9067 to be accelerated and in a foreclosure status.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 114 of Plaintiff's Complaint the application and processing of payments would have been done by Dovenmuehle.

**115.** Defendants' acts and omissions resulted in severe injury to Plaintiff. Specifically, Defendants' acts and omissions are the proximate causation of Plaintiff's damages, which include, but are not limited to:

i.    Anxiety, stress, and depression;

ii.   Hypertension;

iii.  Emotional distress (aggravation, frustration);

iv.   Inconvenience, loss of time and resources;

v.    Interest, late fees, property inspection fees, foreclosure costs, and other fees that have been wrongfully added to Plaintiff's loan balance;

vi.   Mental anguish;

vii.   Fear and anxiety associated with being subjected to living in a perpetual state of fear that his

home was subjected to foreclosure through no fault of Plaintiff's, and that he would lose his

home as a result of Defendants' actions;

viii.   Increased usage of cellular services;

ix.    Diminished battery capacity;

x.     Diminished data space; and

xi.    Increased usage of electricity

xii.   Certified mail expenses; and

xiii.  Attorney fees.

ANSWER: NLS denies that the actions of NLS were the cause of the alleged injuries to Plaintiff.

NLS further states that any improper or illegal acts or omissions of Dovenmuehle that may have

resulted in any such injuries were outside the scope of any agency relationship between NLS and

Dovenmuehle.

**COUNT I**
**BREACH OF CONTRACT AS TO ACCOUNT 9067**

**116**. Plaintiff incorporates each of the preceding allegations as if specifically stated

herein.

ANSWER: NLS incorporates its answer to each of the preceding allegations as if specifically set

forth herein.

**117**. Plaintiff has a valid and enforceable loan modification contract with NLS as the

creditor of the loan and Dovenmuehle as the servicer of Account 9067. *See Exhibit A.*

ANSWER: NLS admits that it entered into the loan modification contract attached as Exhibit A.

NLS makes no answer with respect to the legal conclusion of enforceability of said contract.

NLS denies that it is currently the "creditor of the loan."

**118.** Plaintiff fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 118, from information received from Dovenmuehle, NLS denies that Plaintiff has performed all of his duties under the mortgage and the loan modification contract.

**119.** Defendants breached the loan modification contract by:

i. misapplying Plaintiff's principal, interest, and escrow payments;

ii. rejecting Plaintiff's payments;

iii. scheduling the subject property for a foreclosure sale in May 2012 when Plaintiff was contractually current with his monthly payments;

iv. treating the loan in "default" when Plaintiff was contractually current;

v. failing to honor the terms of the loan modification;

vi. assessing and collecting unauthorized fees and costs, including "default" and foreclosure related fees after the effective date of the loan modification;

vii. failing to provide Plaintiff accurate account information or accurately respond to Plaintiff's correspondence and other disputes; and

viii. failing to conduct its affairs in good faith.

ANSWER: NLS makes no response to the legal conclusions contained in paragraph 119. NLS denies that it failed to conduct its affairs in good faith. NLS denies that it intentionally breached the contract through any improper actions of Dovenmuehle. Payments were not processed or applied directly by NLS but rather were received and processed by Dovenmuehle in its capacity as a subservicer of the loan.

35

**120**. Plaintiff suffered damages as set forth in paragraphs 110 to 115 that were proximately caused by the breach of contract.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 120 and denies that any such damages were a result of the actions or omissions of NLS.

## COUNT II

### BREACH OF CONTRACT AS TO ACCOUNT 2996

**121**. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

ANSWER: NLS incorporates its answer to each of the preceding allegations as if specifically set forth herein.

**122**. Plaintiff has a valid and enforceable loan modification contract with NLS as the creditor of the loan and Dovenmuehle as the servicer of Account 2996. *See Exhibit B.*

ANSWER: NLS admits that it entered into the loan modification contract attached as Exhibit B. NLS makes no answer with respect to the legal conclusion of enforceability of said contract. NLS denies that it is currently the "creditor of the loan."

**123**. Plaintiff fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 123.

**124**. Defendants breached the loan modification contract by:

i.    misapplying Plaintiff's principal and interest payments;

ii.    scheduling the subject property for a foreclosure sale in May 2012 when Plaintiff was contractually current with his monthly payments;

iii.   rejecting Plaintiff's payments;

iv.   treating the loan in "default" when Plaintiff was contractually current;

v.   failing to honor the terms of the loan modification;

vi.   assessing and collecting unauthorized fees and costs, including escrows, after the effective date of the loan modification;

vii.   failing to provide Plaintiff accurate account information or accurately respond to Plaintiff's correspondence and other disputes; and

viii.   failing to conduct its affairs in good faith.

ANSWER: NLS makes no response to the legal conclusions contained in paragraph 124. NLS denies that it failed to conduct its affairs in good faith. NLS denies that it intentionally breached the contract through any improper actions of Dovenmuehle. Payments were not processed or applied directly by NLS but rather were received and processed by Dovenmuehle in its capacity as a subservicer of the loan.

**125**. Plaintiff suffered damages as set forth in paragraph 110 to 115 that were proximately caused by the breach of contract.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 125 and denies that any such damages were a result of the actions or omissions of NLS.

## COUNT III
### VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT

NLS makes no answer to the allegations of Count III at this time. NLS is joining in a Motion to Dismiss filed herein by Dovenmuehle with respect to said Count III. NLS reserves the right to answer Count III at a later date in the event the Count III survives the Motion to Dismiss.

### COUNT IV

37

## VIOLATION(S) OF THE TELEPHONE CONSUMER PROTECTION ACT

**145**. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

ANSWER: NLS incorporates its answer to each of the preceding allegations as if specifically set forth herein.

**146**. All calls placed to Plaintiff's cellular telephone utilized an automatic telephone dialing system, as defined by 47 U.S.C. § 227(a)(1).

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 146 of Plaintiff's Complaint, any such telephone calls were made by Dovenmuehle.

**147**. Plaintiff is informed and believes that all calls placed to Plaintiff's cellular telephone utilized a predictive dialer.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 147 of Plaintiff's Complaint, any such telephone calls were made by Dovenmuehle.

**148**. Plaintiff is informed and believes that the predictive dialer utilized by Dovenmuehle dials a list of telephone numbers and connects answered dials to agents.

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 148 of Plaintiff's Complaint, any such telephone calls were made by Dovenmuehle.

**149**. All calls placed to Plaintiff's cellular telephone were not made for emergency purposes or placed with prior express consent of Plaintiff, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

ANSWER: NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 149 of Plaintiff's Complaint, any such telephone calls were made by Dovenmuehle.

NLS denies that no consent was ever given by Plaintiff to place calls to Plaintiff's cellular telephone.

**150**. The foregoing acts and omissions of Dovenmuehle constitute multiple and numerous violations of the Telephone Consumer Protection Act, including but not limited to each and every one of the above cited provisions of 47 U.S.C. 227 *et seq*.

ANSWER: NLS makes no answer with respect to the allegations against Dovenmuehle. NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 150 of Plaintiff's Complaint as it relates to the allegations against NLS. any such telephone calls were not made by NLS but would have been made by Dovenmuehle. NLS makes no answer to the legal conclusions contained in paragraph 150 of the Complaint.

**151**. At all times relevant, Dovenmuehle has been responsible for the servicing of Plaintiff's mortgage loan on behalf of NLS. As such, Dovenmuehle's violations of the Telephone Consumer Protection Act are imputed to NLS.

ANSWER: NLS admits that at all relevant times, Dovenmuehle was responsible for servicing the subject mortgage loans, said responsibility including collection efforts in a commercially reasonable manner. NLS states that servicing of the loan did not include using unreasonable, improper or illegal actions in the collection efforts. NLS denies that it was aware of any unreasonable, improper or illegal actions of Dovenmuehle. NLS denies that any unreasonable, improper or illegal actions of Dovenmuehle were within the scope of any agency agreement with NLS. NLS further denies that any unreasonable improper or illegal actions of Dovenmuehle are imputed to NLS. NLS makes no answer to the legal conclusions contained in paragraph 150 of the Complaint. NLS denies that Dovenmuehle was acting as an agent or fiduciary of NLS when it committed acts that may have violated the Telephone Consumer Protection Act.

**152**. Despite repeated demands to cease calls to his cellular phone, Dovenmuehle defiantly continued making harassing calls to his cellular phone.

ANSWER: NLS makes no answer with respect to the allegations against Dovenmuehle. NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 152 of Plaintiff's Complaint as it relates to the allegations against NLS, any such telephone calls were made by Dovenmuehle.

**153**. To the extent Dovenmuehle *ever* had consent to call Plaintiff, such consent was undoubtedly revoked.

ANSWER: NLS makes no answer with respect to the allegations against Dovenmuehle. NLS lacks knowledge or information sufficient to form a belief about the truth of paragraph 153 of Plaintiff's Complaint as it relates to the allegations against NLS, any such telephone calls or alleged revocation of consent were made by or to Dovenmuehle.

**154**. As pled in paragraphs 110 to 115 above, Dovenmuehle's unfair acts and omissions resulted in severe injury to Plaintiff.

ANSWER: NLS incorporates its answer to paragraphs110 to 115 as if specifically set forth herein. NLS makes no answer with respect to the allegations against Dovenmuehle. NLS denies that it is responsible for any unfair acts and omissions of Dovenmuehle.

**155**. As a result of Dovenmuehle's violations of 47 U.S.C. 227 *et seq*. Plaintiff is entitled to receive $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B). What is more, as a result of Dovenmuehle's *knowing and willful violations* of 47 U.S.C. 227, Plaintiff is entitled to receive $1,500.00 in treble damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

ANSWER: NLS makes no answer with respect to the allegations against Dovenmuehle. NLS denies that it is responsible for any unfair acts and omissions of Dovenmuehle. NLS lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations paragraph 155 of Plaintiff's Complaint as it relates to the allegations against NLS. NLS makes no answer to the legal conclusions contained in paragraph 155 of the Complaint.

## COUNT V
### VIOLATION(S) OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

NLS makes no answer to the allegations of Count V at this time. NLS is joining in a Motion to Dismiss filed herein by Dovenmuehle with respect to said Count V. NLS reserves the right to answer Count V at a later date in the event the Count V survives the Motion to Dismiss.

## AFFIRMATIVE AND OTHER DEFENSES

### FIRST AFFIRMATIVE DEFENSE

The Complaint, including each of its counts and claims, fails to state facts sufficient to constitute a cause of action against NLS.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's counts and claims are barred by applicable statute of limitations.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or reduced by contributory negligence, mistake, or fraud. Plaintiff was aware that its communications were with Dovenmuehle and not directly with NLS.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred to the extent those claims lack a basis in fact or law.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate his alleged damages. Plaintiff failed to notify NLS of the alleged improper communications from Dovenmuehle.

41

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrines of waiver. Plaintiff failed to notify NLS of the alleged communications from Dovenmuehle. Plaintiff entered into subsequent agreements with NLS and took advantage of those agreements.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by the doctrine of laches. Plaintiff failed to notify NLS of the alleged communications from Dovenmuehle. Plaintiff failed to make his claims against NLS in a timely manner and entered into various subsequent agreements with NLS with respect to the delinquent mortgage.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred by the doctrine of estoppel. Plaintiff failed to notify NLS of the alleged communications from Dovenmuehle. Plaintiff failed to make his claims against NLS in a timely manner and entered into various subsequent agreements with NLS with respect to the delinquent mortgage.

## NINTH AFFIRMATIVE DEFENSE

Plaintiffs are precluded from entitlement to any relief by virtue of their unclean hands and breaches of their statutory, common law, and contractual duties. At various relevant times, Plaintiff was in breach of the mortgage contract or contracts.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or reduced because any injury to plaintiffs was caused by the acts or omissions of Dovenmuehle or other third parties for whom NLS is not responsible.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are or may be preempted by other applicable law.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by any other matter constituting an avoidance or affirmative defense on legal or equitable grounds.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by Orders and Judgments that were entered in the Circuit Court of Cook County, Illinois Case No. 11 CH 24609.

## FOURTEENTH AFFIRMATIVE DEFENSE

At all relevant times, Dovenmuehle was responsible for servicing the subject mortgage loans, said responsibility including collection efforts in a commercially reasonable manner. Servicing of the loan by did not include using unreasonable, improper or illegal actions in the collection efforts by Dovenmuehle. NLS was not aware of any unreasonable, improper or illegal actions of Dovenmuehle. Any unreasonable, improper or illegal actions of Dovenmuehle were not within the scope of any agency agreement with NLS. Any unreasonable, improper or illegal actions of Dovenmuehle are not imputed to NLS.

To the extent that plaintiffs have failed to set forth their claims with sufficient particularity to permit NLS to determine all applicable and available defenses, NLS reserves its rights to amend and/or supplement this Answer with additional defenses. In addition, NLS reserves its right to seek redress against Dovenmuehle to the extent that NLS is held liable for the illegal, improper or other actions of Dovenmuehle.

WHEREFORE Defendant, NEIGHBORHOOD LENDING SERVICES, INC. prays as follows:

a. Counts I, II, III, IV and V of Plaintiff's Complaint be dismissed with prejudice as to said Defendant;

b. Judgment be entered in favor of NEIGHBORHOOD LENDING SERVICES, INC. and against Plaintiff with respect to all counts;

c. The court find that NEIGHBORHOOD LENDING SERVICES, INC. is not liable for any wrongful actions or omissions alleged in the Complaint to have been taken by Dovenmuehle or other third parties.

d. To the extent the NEIGHBORHOOD LENDING SERVICES is held liable or responsible for the illegal, improper or other actions of Dovenmuehle, NMEIGHBORHOOD LENDING SERVICES, INC. prays for the entry of an order granting it leave to file a cross claim against DOVENMUEHLE MORTGAGE, INC.

e. This court grant other relief that it deems appropriate and equitable.

NEIGHBORHOOD LENDING SERVICES, INC.

By:      */s/ Kenneth K. Shaw, Jr.*____
         One of their attorneys

Kenneth, K. Shaw, Jr.
Kropik Papuga & Shaw
120 South LaSalle Street
Chicago, Illinois 60603
Phone: (312) 236-6405
Fax: (312) 236-8060
kshaw@kropik.net