**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NATHANIEL PHILLIPS, | |
| Plaintiff, | Case No. 1:17-cv-08882 |
| v. | Judge: Honorable Jeffrey T. Gilbert |
| DOVENMUEHLE MORTGAGE, INC., NEIGHBORHOOD LENDING SERVICES, INC., TRANSUNION, LLC, and EQUIFAX INFORMATION SERVICES, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## FIRST AMENDED COMPLAINT

NOW COMES Nathaniel Phillips ("Plaintiff"), by and through his attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, Dovenmuehle Mortgage, Inc. ("DMI"), Neighborhood Lending Services, Inc. ("NLS"), TransUnion, LLC ("TransUnion"), and Equifax Information Services, LLC ("Equifax") (collectively "Defendants"), as follows:

### NATURE OF THE ACTION

1.      This is an action brought by a consumer seeking redress for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* (hereinafter "RESPA"), Breach of Contract, the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.*, the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "TCPA"), and the Fair Credit Reporting Act pursuant to 15 U.S.C. § 1681 *et seq.* (hereinafter "FCRA").

2.      All of the claims stated herein stem from the wrongful servicing, debt collection activities, and credit reporting related to Plaintiff's mortgage loan.

1

## JURISDICTION AND VENUE

3.     Subject matter jurisdiction is conferred upon this Court by 12 U.S.C. § 2605, 15 U.S.C. § 1681 *et seq.*, and 28 U.S.C. §§1331, 1337, as the action arises under the laws of the United States.

4.     Supplemental jurisdiction exists over the breach of contract and Illinois Consumer Fraud and Deceptive Business Practices Act claim(s) under 28 U.S.C. § 1367.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as all Defendants conduct business in the Northern District of Illinois and all of the events or omissions giving rise to the claims occurred within the Northern District of Illinois.

## PARTIES

6.     Plaintiff is a consumer and a natural person over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

7.     DMI is a foreign corporation formed under the laws of the State of Delaware. Dovenmuehle has a principal place of business located at 1 Corporate Drive, Suite 350, Lake Zurich, Illinois 60047. "Dovenmuehle is one of the leading mortgage subservicing companies in the country servicing loans on behalf of commercial banks, savings banks, credit unions, insurance companies, mortgage banking companies and state and local housing finance agencies nationwide,"[1] including NLS in the State of Illinois.

8.     DMI's "private label subservicing program" includes, among other services, the following[1]:

- Monthly borrower billing with fully customized statements using the lender's name, logo, colors and monthly messaging capabilities;

---

[1] www.dovenmuehle.com last viewed on December 3, 2017 at 6:04:17 P.M. (CST).

- Payment processing including mail payments through multiple lockbox locations nationwide, telephone payments, on-line payments, branch payments and Western Union payments;
- Escrow administration including bill collection for property taxes, hazard insurance and flood insurance, bill payments, escrow analysis and annual escrow statements;
- Collections counseling, loss mitigation including HAMP modifications, and default administration;
- Credit bureau reporting and all IRS and borrower year-end reporting.

9. NLS is a domestic not-for-profit corporation formed under the laws of the State of Illinois with its principal place of business located at 1279 North Milwaukee Avenue, 5th Floor, Chicago, Illinois 60622.

10. DMI and NLS are collectively referred to as "Mortgage Defendants."

11. At all relevant times, Mortgage Defendants were each acting as an agent and/or employee of each of the other Mortgage Defendant and were each acting within the course and scope of said agency and/or employment with the full knowledge and consent of the other Mortgage Defendant and thus, each of the acts and omissions complained of herein were made known to, and ratified by each Mortgage Defendant.

12. TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

13. Equifax is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and

3

credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

14.     TransUnion and Equifax are collectively referred to as "CRAs."

## FACTS SUPPORTING CAUSES OF ACTION

15.     On March 3, 2006, Plaintiff executed a mortgage in favor of NLS to secure promissory notes in the amounts of $106,041.00 ("Account 9067" or "First Mortgage") with monthly principal and interest installments of $704.07 (plus escrow) and a maturity date of April 1, 2036.

16.     On March 3, 2006, Plaintiff executed a promissory note in the amount of $49,000.00 ("Deferred Note") $0.00 monthly payments pursuant to the terms of the Deferred Note and a maturity date of March 31, 2011[2].

17.     On February 23, 2007, Plaintiff executed a mortgage in favor of NLS to secure a promissory note in the amount of $15,906.00 ("Account 2996" or "Second Mortgage"). The promissory note was payable in monthly installments of principal and interest in the amount of $117.47 with a maturity date of March 17, 2027.

18.     In January 2010, Mortgage Defendants claimed Plaintiff's Account 9067 was in default for December 2009 and January 2010. Plaintiff disputed that the loan was in default and requested that Mortgage Defendants send him detailed accountings pertaining to both Account 9067 and Account 2996 (collectively "subject loans").

---

[2] Paragraph 3(A) of the Deferred Note provided, in pertinent part: "I will not be required to pay principal and interest by making a payment every month. No minimum payments are required per Section 11 of this Note. If, on March 31, **2011,** which is called the "Maturity Date" I have complied with all the terms and conditions of this Note, any remaining principal and interest amounts will be forgiven."

19.    Mortgage Defendants acknowledged receipt of Plaintiff's request, but failed to provide Plaintiff with the requested accountings.

20.    Mortgage Defendants continued to send Plaintiff notices alleging Account 9067 was in default despite the fact the Plaintiff timely tendered all payments. Plaintiff continued to dispute the alleged default and made numerous requests for complete itemized accountings of the subject loans, but NLS ignored Plaintiff's numerous requests.

21.    In an attempt to save his home, Plaintiff applied for a loss mitigation workout in 2010 and by letter dated December 1, 2010, NLS notified Plaintiff that his request for a loan modification was approved.

22.    Plaintiff entered into the Loan Modification Agreement modifying Account 9067 with the effective date of November 1, 2010, a new modified unpaid principal balance of $106,163.10 at 2.000% interest and new monthly payments of $597.53 and an upfront cash payment of $697.53.

23.    Despite the Loan Modification, Mortgage Defendants continued to send Plaintiff dunning letters stating Account 9067 was in default when Plaintiff was, in fact, current with his mortgage payment. Plaintiff vigorously disputed the default status.

24.    On February 4, 2011, Plaintiff spoke with "Ms. Pat" in NLS's Loss Mitigation Department regarding his request for a complete payment history.  According to "Ms. Pat," she requested the complete payment history from Customer Service on December 30, 2010.

25.    On February 9, 2011, Plaintiff sent NLS a letter requesting that it justify placing Account 9067 in arrears and requesting a complete payment history.

26.    In his February 9, 2011 letter, Plaintiff also asked that "all forthcoming correspondence be provided in writing until a level of trust is accepted by me as it relates to NLS."

5

27. On February 15, 2011, Plaintiff sent another letter to NLS disputing Mortgage Defendants' position that Plaintiff's payments had not been made in a timely manner.

28. On July 13, 2011, NLS filed a Complaint to Foreclose Mortgage, Case No. 11 CH 24609 in the Circuit Court of Cook County, alleging "[T]he mortgagor has failed to pay the monthly installments due under the note and the loan is due for the November 1, 2010 payment. There remains an outstanding principal balance of $99,673.01 plus interest, attorney's fees, foreclosure costs, late charges, advances and expenses incurred by [NLS] due to the mortgagor's failure to make payments ("foreclosure action)."

29. Plaintiff applied for a loss mitigation workout in another attempt to save his home from foreclosure. NLS denied receiving all documents and despite Plaintiff resubmitting the documents several times, NLS denied Plaintiff's request for a loss mitigation workout on January 20, 2012, alleging Plaintiff had not submitted all documentation.

30. Plaintiff continued to dispute the default status of Account 9067 and submitted and resubmitted documentation in support of his request for a loss mitigation workout.

31. Finally, on or about December 1, 2012, Plaintiff was approved for and entered into a Loan Modification Agreement on Account 9067 with the following terms[3]:

- New Principal Balance $126,019.87;
- Deferred Principal Balance of $26,346.86 (on which amount Plaintiff would not pay interest or make monthly payments);
- New Interest-Bearing Principal Balance $99,673.01;
- Years 1-3 (12/01/2012 – 12/01/2015) 2.000% interest with principal and interest payments of $445.76 (plus escrow), beginning 01/01/2013;
- Year 4 (12/01/2015 – 12/01/2016) 3.000% interest with principal and interest payments of $489.37 (plus escrow), beginning 01/01/2016;

---

[3] NLS wrongfully prosecuted the foreclosure action for 14 months, even obtaining a Judgement of Foreclosure on November 29, 2012. Then, only two days later, NLS entered into a loan modification with Plaintiff.

- Years 5-24 (12/01/2016 – maturity, 04/01/2036) 4.000% interest with principal and interest payments of $533.33 (plus escrow), beginning 01/01/2017;
- Deferred Principal Balance, plus any other amounts owed, due at maturity.

*See **Exhibit A**,* attached hereto, a true copy of the loan modification agreement on Account 9067.

32.     On or about December 14, 2012, Plaintiff was approved for and entered into a Loan Modification Agreement on Account 2996 with the following terms:

- Unpaid Principal Balance $11,908.44;
- 2.000% interest from 12/14/2012, with principal and interest payments of $80.09 beginning 01/14/2013;
- 3.000% interest from 12/14/2015, with principal and interest payments of $84.53 beginning 01/14/2016;
- 4.000% interest from 12/14/2016 until maturity (03/14/2026), with principal and interest payments of $88.73 beginning 01/14/2017.

*See **Exhibit B**,* attached hereto, a true copy of the loan modification agreement on Account 2996.

33.     On January 17, 2013, NLS dismissed the Foreclosure action.

34.     Plaintiff made timely payments on the subject loans under the terms of the Loan Modification Agreements.

35.     However, almost immediately after entering into the Loan Modification Agreements and following the dismissal of the Foreclosure action, on February 1, 2013, Mortgage Defendants sent a Delinquent Notice to Plaintiff, regarding Account 9067, claiming the regular monthly payment in the amount of $662.35 due for 02/01/2013, plus late charges in the amount of $22.29.

36.     On March 1, 2013, Mortgage Defendants sent a Final Notice to Plaintiff, claiming Account 9067 was two regular monthly payments past due, plus late charges.

37.     On April 3, 2013, Mortgage Defendants sent a letter to Plaintiff stating Account 9067 was in default.

38.     On May 5, 2013, Mortgage Defendants sent Plaintiff a Notice of Intent to Foreclose.

39.     On May 15, 2013, Mortgage Defendants claimed Plaintiff was three payments past due on Account 9067.

40.     On May 22, 2013, Mortgage Defendants sent Plaintiff a Notice of Breach and Right to Cure Default, claiming Account 9067 was due for monthly payments from 03/01/2013 to 05/01/2013, plus late charges and other charges.

41.     On May 31, 2013, Mortgage Defendants returned Plaintiff's payment dated 05/28/2013 in the amount of $677.77 claiming the amount due was $2,061.46.

42.     On or about September 1, 2013, Mortgage Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 due for the 09/01/2013 payment, plus late charges.

43.     On or about October 1, 2013, Mortgage Defendants sent Plaintiff another Delinquent Notice claiming Account 9067 due for the 10/01/2013 payment, plus late charges.

44.     On or about August 14, 2014, Mortgage Defendants sent Plaintiff a Delinquent Notice on Account 2996, claiming the Account was due for 08/14/2014, plus late charges.

45.     Plaintiff continued to make timely monthly payments on Accounts 9067 and 2996 and, in fact, paid additional amounts to principal on both Accounts.

46.     On December 11, 2015, Mortgage Defendants applied Plaintiff's payment in the amount of $744.07 to Account 9067 for the January 2016 payment.

47.     From December 11, 2015 through September 5, 2017, Mortgage Defendants posted Plaintiff's payments, as follows:

| Date Payment Posted | Amount | Applied to Account 9067 | Date Applied to | Misapplied to Account 2996 |
|---|---|---|---|---|
| 12/11/2015 | $744.07 | x | 01/2016 | |
| 12/29/2015 | $744.07 | x | 02/2016 | |
| 03/03/2016 | $744.07 | x | 03/2016 | |
| 04/04/2016 | $744.07 | x | 04/2016 | |
| 04/26/2016 | $744.77 | | | $660.24 +$84.53 $744.77 posted to 2nd mortgage |
| 05/06/2016 | $744.07 | x | 05/2016 | |
| 06/07/2016 | $744.07 | x | 06/2016 | |
| 07/06/2016 | $744.07 | x | 07/2016 | |
| 07/26/2016 | $744.07 | x | 08/2016 | |
| 08/03/2016 | $744.07 | x | 09/2016 | |
| 09/12/2016 | $744.77 | | | $660.24 +$84.53 $744.77 posted to 2nd mortgage |
| 10/14/2016 | $777.77 | x | 10/2016 | |
| 11/15/2016 | $777.77 | x | 11/2016 | |
| 12/14/2016 | $776.77 | x | 12/2016 | |
| 01/10/2017 | $730.12 | | | $730.12 posted to 2nd mortgage |
| 02/07/2017 | $814.77 | x | **01/2017** | |
| 03/01/2017 | $820.77 | x | **02/2017** | |
| 04/14/2017 | $900.00 | x | **03/2017** | |
| 05/02/2017 | $900.00 | x | **04/2017** | |
| 06/05/2017 | $900.77 | | | $900.77 posted to 2nd mortgage |
| 07/05/2017 | $900.77 | x | **05/2017** | |
| 08/03/2017 | $900.77 | x | **06/2017** | |

| 09/05/2017 | $900.77 | | | $900.77 posted to 2nd mortgage |
|---|---|---|---|---|

48.     On April 26, 2016, Mortgage Defendants misapplied Plaintiff's Account 9067 payment in the total amount of $744.77 *to* Account 2996 in two separate entries of $660.24 and $84.53.

49.     On September 12, 2016, Mortgage Defendants misapplied Plaintiff's Account 9067 payment in the total amount of $744.77 *to* Account 2996 in two separate entries of $660.24 and $84.53.

50.     NLS's November 16, 2016 monthly statement for Account 2996 indicated that the loan was due for the ***03/14/2017*** payment.

51.     DMI, Servicer for NLS, reported the following information on the December 31, 2016 mortgage interest statements (Form 1098):

> **Account 9067**:
> (Beginning Principal Balance per 2015 Form 1098) $111,226.58
> Ending Principal Balance $108,013.85
> Principal Paid $3,212.73
>
> **Account 2996:**
> (Beginning Principal Balance per 2015 Form 1098) $8,467.80
> Ending Principal Balance $6,073.09
> Principal Paid $2,394.71

52.     On January 10, 2017, Mortgage Defendants applied Plaintiff's Account 9067 payment in the total amount of $820.77 to Account 2996, in two separate entries of $730.12 and $90.65, causing Plaintiff's first mortgage (Account 9067) to reflect a delinquent status.

53.     On January 11, 2017, Mortgage Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the 01/01/2017 regular monthly payment in the amount of $814.49.

54.     On February 1, 2017, Mortgage Defendants sent Plaintiff a Final Notice claiming Account 9067 was due for two regular monthly payments, plus late charges.

55.     On February 13, 2017, Mortgage Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the 02/01/2017 payment, plus accrued late charges of $106.03.

56.     On or about March 13, 2017, Mortgage Defendants sent Plaintiff a Delinquent Notice claiming Account 9067 was due for the March 1, 2017 payment, plus accrued late charges of $132.70.

57.     On April 4, 2017, Mortgage Defendants sent Plaintiff a Final Notice claiming Account 9067 was due for two regular monthly payments, plus late charges.

58.     On June 5, 2017, Mortgage Defendants misapplied Plaintiff's Account 9067 payment in the amount of $900.77 to Account 2996 as a "principal payment," causing Plaintiff's first mortgage (Account 9067) to reflect a two-month delinquent status.

59.     On July 20, 2017, Mortgage Defendants sent Plaintiff, via certified mail, a Notice of Breach and Right to Cure Default, stating "the nature of your default is the failure to make the monthly mortgage payment(s) from June 1, 2017 to July 1, 2017. Late charges and other charges have also accrued in the amount of $253.38. The total amount past due now required to cure this default is $1,625.06" on or before August 29, 2017. Plaintiff's "failure to cure the default on or before August 29, 1027, may result in acceleration of the sums secured by the Security Instrument, foreclosure by judicial proceeding, and sale of the Property."

60.     On September 5, 2017, Mortgage Defendants misapplied Plaintiff's Account 9067 payment in the total amount of $900.77 to Account 2996 in two separate entries of $812.04 and $88.73, causing Plaintiff's first mortgage (Account 9067) to reflect a three-month delinquent status.

11

61.     Mortgage Defendants' September 11, 2017 monthly statement for Account 9067 claimed the Account was due for 07/01/2017, 08/01/2017 and 09/01/2017 payments in the amount of $814.49 each, and the current payment due in the amount of $774.60, plus fees totaling $334.72.

62.     On September 11, 2017, Mortgage Defendants sent Plaintiff a Notice of Acceleration, demanding the immediate payment of the total balance due in the amount of $104,789.03 (current principal balance of $78,462.03 and deferred principal balance of $26,327.00), plus interest, costs and fees on Account 9067.

63.     On October 4, 2017, Mortgage Defendants rejected Plaintiff's payment to Account 9067 in the amount of $777.77 and returned the funds to Plaintiff on October 10, 2017.

64.     On October 11, 2017, Mortgage Defendants claimed Account 9067 was overdue for 07/01/2017, 08/01/2017, 09/01/2017 and 10/01/2017 payments, along with the current payment.

65.     On October 17, 2017, Plaintiff made a payment to Account 2996 in the amount of $90.77 payment which was *rejected* by Mortgage Defendants on October 23, 2017.

66.     On October 30, 2017, Plaintiff made another payment in the amount of $181.54 representing two monthly payments to Account 2996. Mortgage Defendants accepted these payments on November 6, 2017.

67.     Also, on or about October 30, 2017, Plaintiff made another payment in the amount of $1,555.54 representing two monthly payments to Account 9067.  Mortgage Defendants *rejected* these payments on November 6, 2017.

68.     Mortgage Defendants continued to reject Plaintiff's mortgage loan payments to Account 9067, refusing to properly and accurately apply the timely payments to Plaintiff's

12

Account, and assessing late charges and penalties for Mortgage Defendants' failure to receive Plaintiff's payments that Mortgage Defendants had, in fact, received, rejected, and returned.

***Mortgage Defendants' Collection Calls placed to Plaintiff's Cellular Phone.***

69.     At all times relevant, Plaintiff was the sole operator, possessor and subscriber of the cellular telephone number of XXX-XXX-6142 and therefore, was personally financially responsible for the cellular telephone equipment and services.

70.     As payments were being misapplied, over the years, Mortgage Defendants would call Plaintiff on his cellular phone and wrongfully demand payment on the subject loans.

71.     For example, on October 3, 2016, following the September 12, 2016 misapplication of Plaintiff's payment, DMI caused a call to be to be placed a to Plaintiff's cellular telephone number. During this call, "Adrian", DMI's representative, demanded payment on Account 9067.

72.     During the October 3, 2016 telephone call, Plaintiff asked that Mortgage Defendants communicate with him in writing *only*.

73.     On December 13, 2016, Mortgage Defendants' representative called Plaintiff's cellular telephone number.  Plaintiff again demanded that Mortgage Defendants stop calling his cellular telephone.

74.     On February 13, 2017, Mortgage Defendants' representative called Plaintiff's cellular telephone number and Plaintiff again demanded that Mortgage Defendants stop calling his cellular telephone.

75.     On June 6, 2017, Mortgage Defendants' representative called Plaintiff's cellular telephone number regarding an account in the name of "Henry or Victoria Milton."

76.     Since Plaintiff's February 9, 2011 letter to NLS requesting that all communications from Mortgage Defendants be in writing only, Plaintiff made several additional demands that all

communications from Mortgage Defendants be in writing and that Mortgage Defendants cease calling his cellular telephone number.

77.     Nevertheless, since Plaintiff's February 9, 2011 letter to NLS, Mortgage Defendants have made hundreds of calls to Plaintiff's cellular phone without his consent.[4] Between October 3, 2016 and November 20, 2017 alone, Defendants placed no fewer than 78 telephone calls to Plaintiff's cellular phone number without Plaintiff's consent.

**_Plaintiff's Requests for Information and Notices of Error to Mortgage Defendants._**

78.     Since 2010, Plaintiff has repeatedly disputed the default status of Account 9067. Mortgage Defendants have failed and refused to investigate Plaintiff's disputes and have failed and refused to correct the misapplication of payments.

79.     Plaintiff had made all payments pursuant to the terms of the December 1, 2012 and December 14, 2012 Loan Modification Agreements and therefore, Plaintiff disputed Mortgage Defendants' Notices that Account 9067 was in default.

80.     On October 24, 2016, DMI, using NLS's name, logo and letterhead[5], acknowledged receipt of Plaintiff's inquiry regarding funds posted to Plaintiff's Account 2996 stating: "We are pleased to advise you that the adjustment(s) you requested are completed**." See _Exhibit C,_** attached hereto, true copy of October 24, 2016 response from DMI.

81.     On October 28, 2016, DMI sent an acknowledgment regarding Plaintiff's inquiry as to Account 9067, stating that the inquiry had been referred to the appropriate area for review

---

[4] In the calls Plaintiff answered, he noted a short pause and click before the caller spoke indicating that the calls were made using an auto-dialer.

[5] DMI used NLS's name, logo and letterhead for all acknowledgments of and response to Plaintiff's inquiries, NOEs and RFIs.

and "We will make every effort to provide a response to your inquiry as promptly as possible. In any event, we will do so within the time limit required by law." DMI made no further response to Plaintiff's inquiry regarding Account 9067. *See **Exhibit D***, attached hereto, true copy of October 28, 2016 acknowledgment from DMI.

82.     On December 5, 2016, DMI sent a second acknowledgment regarding Plaintiff's inquiry regarding funds posted to Plaintiff's Account 9067, stating that it needed an additional 15 days to respond to the inquiry. "We will respond no later than 1/4/17." To date, Mortgage Defendants have never responded to Plaintiff's inquiry**.** *See **Exhibit E,*** attached hereto, true copy of December 5, 2016 acknowledgment from DMI.

83.     On February 10, 2017, Plaintiff sent DMI a Notice of Error ("NOE") pursuant to 12 C.F.R. § 1024.35 and Request for Information ("RFI") pursuant to 12 C.F.R. § 1024.36. *See **Exhibit F***, attached hereto, true copy of Plaintiff's February 10, 2017 NOE pursuant to 12 C.F.R. § 1024.35 and Request for Information pursuant to 12 C.F.R. § 1024.36.

84.     The Plaintiff's NOE asserted that DMI had reported derogatory and inaccurate information and statements regarding the above-referenced mortgage loan – namely, "maximum delinquency of 120 [days] in 09/2010 for $4,616 and in 12/2012 for $23,412."

85.     Plaintiff's RFI pursuant to 12 C.F.R. § 1024.36 specifically requested:

1)  An exact reproduction of the life of loan mortgage transactional history for this loan from the contract system of record from your electronic software program for this loan.

    For purposes of identification, the life of loan transactional history means any software program or system by which the servicer records the current mortgage balance, the receipt of all payments, the assessment of any late fees or charges, and the recording of any corporate advances for any fees or charges including but not limited to property inspection fees, broker price opinion fees, legal fees, escrow fees, processing fees, technology fees, or any other collateral charge. Also, to the extent this life of loan transactional

history includes in numeric or alpha-numeric codes, please attach a complete list of all such codes and state in plain English a short description for each such code.

2) Copies of any and all servicing notes related to your servicing of the above-referenced mortgage loan for the time period from January 10, 2014 to the present. *(Please Note: Since you have not responded to the Borrower's RFI, we amend this request to include the time period from January 1, 2013 to the present.)*

3) Copies of any and all mortgage statements for the above-referenced mortgage loan for the time period of January 1, 2013, to the present.

4) A detailed copy of your last three (3) analyses of the escrow account of the mortgage.

*See* **Exhibit F.**

86.     On February 10, 2017, Plaintiff sent DMI an RFI pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) specifically requesting:

1) The identity of and address for the current owner of the above-referenced mortgage loan.

2) The identity of and address for the master servicer of the above-referenced mortgage loan.

3) The identity of and address for the current servicer of the above-referenced mortgage loan.

*See* **Exhibit G**, attached hereto, true copy of Plaintiff's February 10, 2017 RFI pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2).

87.     On February 10, 2017, Plaintiff sent DMI an RFI pursuant to 12 C.F.R. § 1026.36(c)(3) specifically requesting a payoff statement related to Account 9067. *See* **Exhibit H,** attached hereto, true copy of Plaintiff's February 10, 2017 RFI pursuant to 12 C.F.R. § 1026.36(c)(3).

88.     On February 27, 2017, DMI acknowledged receipt of the Plaintiff's February 10, 2017 inquiry regarding Account 9067. DMI requested additional time to respond because "we have not completed our investigation of the error(s) identified in your correspondence." DMI stated it would respond no later than 3/24/17. *See Exhibit I,* attached hereto, true copy of DMI's February 27, 2017 letter acknowledging receipt of Plaintiff's inquiry.

89.     DMI refused to respond to Plaintiff's NOEs and RFIs regarding the status of the mortgage accounts and misapplication of payments. Fearful that he would lose his home to foreclosure, Plaintiff sought legal counsel with the Sulaiman Law Group, Ltd.

90.     On November 14, 2017, Plaintiff's attorneys sent the following NOEs and RFIs to DMI which were delivered to DMI on November 20, 2017:

  1) Notice of Error pursuant to 12 C.F.R. § 1024.35 for Defendants' failure to respond to Plaintiff's February 10, 2017 Notice of Error and Requests for Information [*See Exhibit J*, attached hereto, true copy of NOE and RFI, certified mail tracking number 70140640000389013304];

  2) Notice of Error pursuant to 12 C.F.R. § 1024.35 asserting Defendants' misapplication of Plaintiff's monthly payments and the assessment of late charges and other fees to Account 9067 since the December 1, 2012 Loan Modification Agreement [*See Exhibit K*, attached hereto, true copy of NOE, certified mail tracking number 70150640000389013311];

  3) Request for Information pursuant to 12 C.F.R. § 1024.36 regarding Account 2996 [*See Exhibit L*, attached hereto, true copy of RFI, certified mail tracking number 70150640000389013328]; and

  4) Request for Information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2) regarding Account 2996 [*See Exhibit M*, attached hereto, true copy of RFI, certified tracking number 70150640000389013335].

91.     By letters dated November 20, 2017, Mortgage Defendants acknowledged receipt of Plaintiff's "inquiry" regarding Account 9067 and the "inquiry" regarding Account 2996, each stating DMI's effort to provide a response as promptly as possible and "in any event…within the

time limit required by law." *See **Exhibit N***, attached hereto, true copies of DMI's letters dated November 20, 2017, acknowledging receipt of inquiries regarding Accounts 9067 and 2996.

92.      By letter dated November 21, 2017 (received by Plaintiff's counsel on November 28, 2017), Mortgage Defendants produced a mortgage loan transaction history (03/14/2007 to 11/03/2017) for Account 2996 in partial response to Plaintiff's November 14, 2017 Request for Information pursuant to 12 C.F.R. § 1024.36 regarding Account 2996. *See **Exhibit O***, attached hereto, true copy of Mortgage Defendants' letter dated November 21, 2017, in partial response to Plaintiff's November 14, 2017 RFI regarding Account 2996 (letter, only).

93.      By letter dated November 28, 2017 (received by Plaintiff's counsel on December 7, 2017), Mortgage Defendants produced a payoff statement, mortgage loan transaction history (02/2015 to 10/11/ 2017), annual escrow analysis dated 08/21/2017, and 11/16/2017 mortgage statement in partial response to Plaintiff's November 14, 2017 RFIs and NOEs regarding Account 9067**. *See **Exhibit P***, attached hereto, true copy of Mortgage Defendants' letter dated November 28, 2017, in partial response to Plaintiff's November 14, 2017 RFI regarding Account 9067 (letter, only).

94.      Mortgage Defendants allege that they responded to Plaintiff's February 10, 2017 NOE and RFIs on March 1, 2017; however, Plaintiff never received the letter and enclosures purportedly sent on March 1, 2017. *See **Exhibit Q***, attached hereto, true copy of Mortgage Defendants' letter dated March 1, 2017, purportedly sent to Plaintiff in partial response to Plaintiff's February 10, 2017 NOE and RFIs regarding Account 9067 (letter, only).

95.      Furthermore, Mortgage Defendants failed to conduct a reasonable investigation of Account 9067 and failed (a) to correct the errors or (b) to provide Plaintiff and Plaintiff's counsel

with written notification that included a statement of the reason or reasons that Mortgage Defendants found no error, in violation of 12 C.F.R. §§ 1024.35(e)(1)(i)(A)&(B).

96.     Mortgage Defendants' mortgage loan transaction histories disclose misapplied payments to Account 2996 and to Account 9067, as well as escrow amounts and adjustments posted to the non-escrow Account 2996.

### *Credit Reporting and Plaintiff's Credit Disputes to Equifax and TransUnion.*

97.     In November 2017, Plaintiff pulled his credit reports. Plaintiff discovered that NLS, DMI, Equifax, and TransUnion were reporting Account 9067 as delinquent.

98.     The reporting of Account 9067 was inaccurate, incomplete, misleading because the subject loan was current, paid as agreed, and with no delinquencies.

### a.  Plaintiff's First Dispute Letter to Equifax

99.     On November 14, 2017, Plaintiff sent a written credit dispute letter to Equifax requesting that his credit file be updated to reflect that "current," or "paid as agreed," and with no delinquencies reported.

100.    Plaintiff's dispute letter stated, in pertinent part: "I entered into a loan modification on this account effective December 1, 2012 with payments beginning January 1, 2013. All payments have been made on time and the loan is current. There are no delinquencies on this account….I request that you forward this letter and enclosures to the creditor listed above [Dovenmuehle]. If, for any reason, you decline to send a copy of my letter and the enclosures to the creditor, I request that you promptly advise me so that I may take additional steps to protect myself."

101.    Plaintiff sent his dispute letter to Equifax via certified mail.

102.     Upon information and belief, DMI received notice of Plaintiff's dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. § 1681i(a)(2).

### b.  Equifax's Failure to Correct Inaccurate Information

103.     On December 9, 2017, Equifax responded to Plaintiff's dispute, stating:

> ***>>>We have researched the credit account. Account # - 310142332\* The results are: This account is currently reporting paid as agreed, with no late payments. We have verified that this item has been reported correctly. Additional information has been provided from the original source regarding this item. If you have additional questions about this item please contact Dovenmuehle Mortgage, Attn: mail Stop NOE 1290, 1 Corporate Dr Ste 360, Lake Zurich IL 60047-8945.***

104.     Despite the explanation given, Equifax and DMI reported the account as follows:



105.     Account 9067 continued to be reported with a past due balance of $5,170, a wrong balance amount,  a wrong scheduled payment amount, and over 120 days past due with the date of the first delinquency as 05/2017 when, in fact, the account should be reported as current and paid as agreed.

### c.  Plaintiff's Second Dispute Letter to Equifax

106.     On December 26**,** 2017, Plaintiff sent a second written dispute letter to Equifax requesting a reinvestigation into the DMI Account 9067.

107.    Plaintiff's second dispute letter stated, in pertinent part: "Dovenmuehle has posted payments made to the first mortgage Account 1423329067 to the second mortgage Account 1423332996."

108.    In further support of his second dispute, Plaintiff enclosed copies of the inaccurate credit report and the following documents showing five misapplied payments, escrow amounts posted to the non-escrowed second mortgage, and showing that the account is reported inaccurately:

- Inaccurate credit report;
- Dovenmuehle account histories showing my **May 2016** and **September 2016** monthly payment to the first mortgage Account 1423329067 posted to the second "non-escrowed" mortgage Account 1423332996;
- Bank statement showing proof of January 2017 payment;
- March 1, 2017 payoff statement showing account due for February 01, 2017 payment;
- Dovenmuehle account histories showing my **January 2017**, **June 2017** and **September 2017** monthly payments to the first mortgage Account 1423329067 posted to the second mortgage Account 1423332996 (thereafter, Dovenmuehle refused to accept my monthly payments).

109.    Plaintiff sent his dispute letter to Equifax via certified mail.

110.    Upon information and belief, DMI received notice of Plaintiff's second dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. § 1681i(a)(2).

**d.  Equifax's Continued Failure to Correct Inaccurate Reporting in Plaintiff's Credit File**

111.    On January 22, 2018, Equifax responded to Plaintiff's second dispute letter, stating:

> >>>*We have researched the credit account Account # - 310142332\* The results are: The prior paying history on this account has been updated. This creditor has verified to OUR company that the current status is being reported correctly. The balance of this item has been updated. We have verified that this account is not reporting as closed. If you have additional questions….*

21

112.     Despite the explanation given, Equifax and DMI continued to report the account as follows:



113.     Account 9067 continued to be reported with a wrong past due amount of $5,541, a wrong balance amount, a wrong scheduled payment amount, and over 120 days past due with the date of the first delinquency as 05/2017 when, in fact, the account should be reported as current and paid as agreed.

114.     The reporting of the subject loan is inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is delinquent on the account and has not made payments on the account since May 2017.

115.     Plaintiff further discovered that Equifax and DMI, despite Plaintiff's disputes, failed to report Account 9067 as disputed.

**e.   Plaintiff's First Dispute Letter to TransUnion**

116.     On November 14, 2017, Plaintiff sent a written credit dispute letter to TransUnion requesting that his credit file be updated to reflect the Dovenmuehle as "current," or "paid as agreed," and with no delinquencies reported.

117.     Plaintiff's dispute letter stated, in pertinent part: "I entered into a loan modification on this account effective December 1, 2012 with payments beginning January 1, 2013. All payments have been made on time and the loan is current. There are no delinquencies on this account.…I request that you forward this letter and enclosures to the creditor listed above

[Dovenmuehle]. If, for any reason, you decline to send a copy of my letter and the enclosures to the creditor, I request that you promptly advise me so that I may take additional steps to protect myself."

118.    Plaintiff sent his dispute letter to TransUnion via certified mail.

119.    Upon information and belief, DMI received notice of Plaintiff's dispute letter and all relevant information from TransUnion within five days of TransUnion receiving Plaintiff's dispute letter. *See* 15 U.S.C. § 1681i(a)(2).

**f.   TransUnion's Failure to Correct Inaccurate Information**

120.    On December 10, 2017, TransUnion responded to Plaintiff's dispute, stating:

> ***Our investigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise, we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you have us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records systems as necessary.***

121.    Despite the explanation given, TransUnion and NLS reported the account, as follows:

122.     Account 9067 continued to be reported with a past due balance of $4,767, a wrong balance amount, a wrong monthly payment amount, and over 120 days past due with the date of the last payment as 08/03/2017 when, in fact, the account should be reported as current and paid as agreed.

**g.   Plaintiff's Second Dispute Letter to TransUnion**

123.     On December 26, 2017, Plaintiff sent a second written dispute letter to TransUnion requesting a reinvestigation into the NLS Account 9067.

124.     Plaintiff's second dispute letter stated, in pertinent part: "TransUnion is erroneously reporting the account as over 120 days past due when it is current and paid as agreed. In fact, additional payments have been made to the principal but have not been credited."

125.     In further support of his second dispute, Plaintiff enclosed copies of the inaccurate credit report and the following documents showing five misapplied payments, escrow amounts posted to the non-escrowed second mortgage, and showing that the account is reported inaccurately:

- Inaccurate credit report;
- Dovenmuehle account histories showing my *May 2016* and *September 2016* monthly payment to the first mortgage Account 1423329067 posted to the second "non-escrowed" mortgage Account 1423332996;
- Bank statement showing proof of January 2017 payment;
- March 1, 2017 payoff statement showing account due for February 01, 2017 payment;
- Dovenmuehle account histories showing my *January 2017*, *June 2017* and *September 2017* monthly payments to the first mortgage Account 1423329067 posted to the second mortgage Account 1423332996 (thereafter, Dovenmuehle refused to accept my monthly payments).

126.     Plaintiff sent his dispute letter to TransUnion via certified mail.

127.    Upon information and belief, NLS received notice of Plaintiff's second dispute letter and all relevant information from TransUnion within five days of TansUnion receiving Plaintiff's dispute letter. *See* 15 U.S.C. § 1681i(a)(2).

### h. TransUnion's Failure to Respond to Second Dispute Letter and Continued Failure to Correct Inaccurate Reporting in Plaintiff's Credit File

128.    TransUnion failed to respond to Plaintiff's Second Dispute Letter, and on February 16, 2017, Plaintiff pulled his TransUnion credit report to find that TransUnion and NLS continued to wrongfully report the NLS Account 9067.

129.    TransUnion and NLS reported the account, as follows:



130.    Account 9067 account continued to be reported as 120 days past due and a wrong monthly payment amount.

131.    The reporting of the subject loan is inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is delinquent on the account and has not made payments on the account since April 2017.

132.    Plaintiff further discovered that TransUnion and NLS, despite Plaintiff's disputes, failed to report Account 9067 as disputed.

133.     The reporting of the Plaintiff's Account 9067 is inaccurate, incomplete, and creates a materially misleading impression that Plaintiff is delinquent and grossly in default.

134.     As of today, Equifax's erroneous reporting of the DMI account continues to paint a false and damaging image of Plaintiff.  Equifax has yet to update the DMI account to accurately reflect the status of Account 9067.

135.     As of today, TransUnion's erroneous reporting of the NLS account continues to paint a false and damaging image of Plaintiff.  TransUnion has yet to update the NLS account to accurately reflect the status of Account 9067.

136.     The entire experience has imposed upon Plaintiff significant distrust, frustration, and distress.

137.     Due to the conduct of the CRAs, Plaintiff was forced to retain counsel to resolve the erroneous credit reporting of the DMI/NLS trade line.

### DAMAGES

138.     Since 2010, Plaintiff made numerous requests for Mortgage Defendants to provide him with documentation regarding his mortgage allegedly being in arrears, but Mortgage Defendants refused to provide any such documentation.

139.     In 2016, Plaintiff sought medical treatment for anxiety and depression directly caused by Mortgage Defendants' conduct over the years.

140.     Plaintiff was prescribed medication for anxiety and depression.

141.     Furthermore, Plaintiff suffers from hypertension that has been exacerbated by stress and anxiety caused by Mortgage Defendants' conduct.

142.    In 2016, Plaintiff's medication dosage was doubled to combat the hypertension caused by and further exacerbated by Mortgage Defendants' conduct.

143.    Mortgage Defendants have continued to erroneously deem Plaintiff's Account 9067 to be seriously delinquent and by refusing payments beginning in October 2017, Mortgage Defendants have forced Plaintiff's Account 9067 to be accelerated and in a foreclosure status.

144.    Mortgage Defendants' acts and omissions resulted in severe injury to Plaintiff. Specifically, Mortgage Defendants' acts and omissions are the proximate causation of Plaintiff's damages, which include, but are not limited to:

     i.    Anxiety, stress, and depression;

    ii.    Hypertension;

    iii.    Emotional distress (aggravation, frustration);

    iv.    Inconvenience, loss of time and resources;

    v.    Interest, late fees, property inspection fees, foreclosure costs, and other fees that have been wrongfully added to Plaintiff's loan balance;

    vi.    Mental anguish;

    vii.    Fear and anxiety associated with being subjected to living in a perpetual state of fear that his home was subjected to foreclosure through no fault of Plaintiff, and that he would lose his home as a result of Defendants' actions;

    viii.    Increased usage of cellular services;

    ix.    Diminished cellular phone battery capacity;

    x.    Diminished cellular phone data space;

    xi.    Increased usage of electricity

    xii.    Medical bills;

    xiii.    Certified mail expenses;

xiv. Loss of credit opportunity; and

xv. Attorney's fees.

## COUNT I
### BREACH OF CONTRACT AS TO ACCOUNT 9067 – 2010 LOAN MODIFICATION
#### (AGAINST NLS)

145. Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

146. In November 2010, Plaintiff entered into a valid and enforceable loan modification contract with NLS as the creditor of the loan (Account 9067).

147. Plaintiff fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the 2010 loan modification contract.

148. NLS breached the 2010 loan modification contract by:

i. treating the loan in "default" when Plaintiff was contractually current;

ii. filing and prosecuting wrongful foreclosure when Plaintiff was current;

iii. failing to honor the terms of the 2010 loan modification;

iv. failing to provide Plaintiff accurate account information or accurately respond to Plaintiff's correspondence and other disputes; and

v. failing to conduct its affairs in good faith.

149. Plaintiff suffered damages, including emotional distress, medical damages, and financial loss, all which were proximately caused by the breach of contract.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests that this Honorable Court:

a. find that NLS materially breached the loan modification contract;

b. award Plaintiff his actual damages to be proven at trial; and

c. award Plaintiff any other relief this Honorable Court deems equitable and just.

## COUNT II
### BREACH OF CONTRACT AS TO ACCOUNT 9067 – 2012 LOAN MODIFICATION
#### (AGAINST NLS)

150.    Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

151.    Plaintiff has a valid and enforceable loan modification contract with NLS as the creditor of the loan (Account 9067). *See Exhibit A.*

152.    Plaintiff fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

153.    NLS breached the loan modification contract by:

    i.    misapplying Plaintiff's principal, interest, and escrow payments;

    ii.    rejecting Plaintiff's payments;

    iii.    treating the loan in "default" when Plaintiff was contractually current;

    iv.    failing to honor the terms of the loan modification;

    v.    assessing and collecting unauthorized fees and costs, including "default" and foreclosure related fees after the effective date of the loan modification;

    vi.    failing to provide Plaintiff accurate account information or accurately respond to Plaintiff's correspondence and other disputes; and

    vii.    failing to conduct its affairs in good faith.

154.    Plaintiff suffered damages, including emotional distress, medical damages, and financials loss, all which were proximately caused by the breach of contract.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests that this Honorable Court:

    d.    find that NLS materially breached the loan modification contract;

    e.    award Plaintiff his actual damages to be proven at trial; and

    f.    award Plaintiff any other relief this Honorable Court deems equitable and just.

## COUNT III
### BREACH OF CONTRACT AS TO ACCOUNT 2996 – 2012 LOAN MODIFICATION
### (AGAINST NLS)

155.    Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

156.    Plaintiff has a valid and enforceable loan modification contract with NLS as the creditor of the loan (Account 2996). *See Exhibit B.*

157.    Plaintiff fully performed his duties under the contract by tendering all monthly payments and by complying with all other terms of the loan modification contract.

158.    NLS breached the loan modification contract by:

    i.    misapplying Plaintiff's principal and interest payments;

    ii.    rejecting Plaintiff's payments;

    iii.    treating the loan in "default" when Plaintiff was contractually current;

    iv.    failing to honor the terms of the loan modification;

    v.    assessing and collecting unauthorized fees and costs, including escrows, after the effective date of the loan modification;

    vi.    failing to provide Plaintiff accurate account information or accurately respond to Plaintiff's correspondence and other disputes; and

    vii.    failing to conduct its affairs in good faith.

159.    Plaintiff suffered damages, including emotional distress, medical damages, and financials loss, all which were proximately caused by the breach of contract.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests that this Honorable Court:

    a.    find that NLS materially breached the loan modification contract;

    b.    award Plaintiff his actual damages to be proven at trial; and

    c.    award Plaintiff any other relief this Honorable Court deems equitable and just.

### COUNT IV
### VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT [6]
### (AGAINST NLS AND DMI)

160.    Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

161.    Each subject loan is a "federally related mortgage" under 12 U.S.C. § 2602(1) and 12 C.F.R. § 1024.2.

162.    Dovenmuehle qualifies as a "servicer" under 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2.

163.    NLS qualifies as a "servicer" under 12 U.S.C. § 2605(i)(2) and 12 C.F.R. § 1024.2.

**a.**    **Violation of 12 U.S.C. §§ 2605(e)(2) & (k) and 12 C.F.R. § 1024.35(e)**

164.    12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.35(e)(3) require a loan servicer, within 30 days of receipt of a RFI or NOE, to (i) make corrections to the account and provide the borrower a written notice; or (ii) conduct an investigation and provide the borrower a written explanation as to why the servicer believes it servicing is correct; or (iii) conduct an investigation and provide the borrower a written explanation as to why the requested information is not available.

165.    Additionally, any written response must include the name and telephone number of a representative of the loan servicer who can provide assistance to the borrower.

166.    On October 24, 2016, DMI *and* NLS, using NLS's name, logo and letterhead, acknowledged receipt of Plaintiff's inquiry regarding funds posted to Plaintiff's Account 2996

---

[6] According to Mortgage Defendants, NLS "is the investor who obtains and services [Plaintiff's] loan" and Dovenmuehle "is a contracted agent assisting with the processing of [Plaintiff's] mortgage payments, managing escrow accounts, and answering questions regarding the servicing of [Plaintiff's] loan." The address for mailing NOEs and RFIs is Dovenmuehle's address; however, Defendants state that *NLS* is both the investor and the servicer. (*See Exhibit Q*).

31

stating: "We are pleased to advise you that the adjustment(s) you requested are completed." *See Exhibit C.*

167.     On October 28, 2016, Mortgage Defendants sent an acknowledgment regarding Plaintiff's inquiry as to Account 9067, stating that the inquiry had been referred to the appropriate area for review and "We will make every effort to provide a response to your inquiry as promptly as possible. In any event, we will do so within the time limit required by law." *See Exhibit D.*

168.     On December 5, 2016, Mortgage Defendants sent a second acknowledgment regarding Plaintiff's inquiry regarding funds posted to Plaintiff's Account, 9067, stating that it needed an additional 15 days to respond to the inquiry. "We will respond no later than 1/4/17." *See Exhibit E.*

169.     Mortgage Defendants failed to respond to Plaintiff's October 24, 2016 inquiry.

170.     On February 10, 2017, Plaintiff sent DMI the following NOE/RFI and RFIs:

    i.     A Notice of Error ("NOE") pursuant to 12 C.F.R. § 1024.35 and Request for Information ("RFI") pursuant to 12 C.F.R. § 1024.36. *See Exhibit F.*

    ii.    A RFI pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2). *See Exhibit G.*

    iii.   A RFI pursuant to 12 C.F.R. § 1026.36(c)(3) specifically requesting a payoff statement related to Account 9067. *See Exhibit H.*

171.     Each NOE and RFI was mailed to DMI at the address designated for NOEs and RFIs on its website: Attention: Mail Stop NOE1290, 1 Corporate Drive, Suite 360, Lake Zurich, IL 60047.

172.     On February 27, 2017, DMI *and* NLS, using NLS's name, logo and letterhead, acknowledged receipt of Plaintiff's February 10, 2017 "inquiry" regarding Account 9067, requesting additional time to respond because "we have not completed our investigation of the

error(s) identified in your correspondence." Mortgage Defendants stated, "**We will respond no later than 3/24/17.**" *See Exhibit I.*

173.     Mortgage Defendants did not provide Plaintiff with a name and phone number of a DMI or NLS representative who could provide assistance to Plaintiff. Instead, it provided an unidentifiable "1-866" number to call "if you have any questions." *See Exhibit I.*

174.     Mortgage Defendants claim to have responded to Plaintiff's February 10, 2017 NOE and RFIs on March 1, 2017; however, Plaintiff was not in receipt of any response until Defendants enclosed a March 1, 2017 letter and attachments with their November 28, 2017 response to Plaintiff's counsel.

175.     With respect to the February 10, 2017 NOE pursuant to 12 C.F.R. § 1024.35 (*Exhibit F*), Mortgage Defendants have failed to (a) make corrections to Account 9067; (b) conduct a reasonable investigation; or (c) respond to Plaintiff in one of the three methods allowed under 12 U.S.C. § 2605(e)(2) and 12 C.F.R. § 1024.35(e)(3), in violation of 12 U.S.C. §§ 1024.35(e)(1)(i)(A)&(B).

176.     With reference to Plaintiff's RFI requesting the identity of the owner of the mortgage loan Account 9067 (*Exhibit G*), Mortgage Defendants failed to respond to Plaintiff's request within 10 business days, in violation of 12 U.S.C. § 2605(k).

177.     With reference to Plaintiff's request for a payoff statement on Account 9067 (*Exhibit H*), Mortgage Defendants failed to provide an accurate statement of the total outstanding balance within seven business days of receipt of request, in violation of 12 C.F.R. § 1026.36(c)(3).

178.     Due to the violations as described above, Plaintiff has suffered actual damages in the form of emotional distress, financial loss in the form of attorney's fees for the preparation and

review of multiple correspondences described above, and certified mail expenses associated with the mailing of these correspondences.

179.    Upon information and belief, Mortgage Defendants' failure to comply with RESPA is part of a pattern and practice of non-compliance with the provisions of RESPA.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests that this Honorable Court:

    a.   enter judgment in his favor and against Mortgage Defendants;

    b.   award Plaintiff actual and statutory damages pursuant to 12 U.S.C. § 2605(f);

    c.   award Plaintiff costs and reasonable attorney fees pursuant to 12 U.S.C. § 2605(f); and

    d.   award Plaintiff any other relief this Honorable Court deems equitable and just.

### COUNT V
### VIOLATION(S) OF THE TELEPHONE CONSUMER PROTECTION ACT
### (AGAINST NLS AND DMI)

180.    Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

181.    All calls placed to Plaintiff's cellular telephone utilized an automatic telephone dialing system, as defined by 47 U.S.C. § 227(a)(1).[7]

182.    Plaintiff is informed and believes that all calls placed to Plaintiff's cellular telephone utilized a predictive dialer.[8] [9]

---

[7] An automatic telephone dialing system means equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such number.

[8] "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012).

[9] "When evaluating the issue whether equipment is an automatic telephone dialing system, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' Accordingly, a system need not actually, store, produce,

183.    Plaintiff is informed and believes that the predictive dialer utilized by DMI dials a list of telephone numbers and connects answered dials to agents.

184.    All calls placed to Plaintiff's cellular telephone were not made for emergency purposes or placed with prior express consent of Plaintiff, as defined by 47 U.S.C. § 227(b)(1)(A)(iii).

185.    The foregoing acts and omissions of DMI constitute multiple and numerous violations of the Telephone Consumer Protection Act, including but not limited to each and every one of the above cited provisions of 47 U.S.C. 227 *et seq*.

186.    At all times relevant, DMI has been responsible for the servicing of Plaintiff's mortgage loan on behalf of NLS.   As such, DMI's violations of the Telephone Consumer Protection Act are imputed to NLS.

187.    Despite repeated demands to cease calls to his cellular phone, DMI defiantly continued making harassing calls to his cellular phone.

188.    To the extent DMI *ever* had consent to call Plaintiff, such consent was undoubtedly revoked.

189.    As pled in paragraphs 139 to 144 above, DMI's unfair acts and omissions resulted in severe injury to Plaintiff.

190.    As a result of Mortgage Defendants' violations of 47 U.S.C. 227 *et seq*. Plaintiff is entitled to receive $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. 227(b)(3)(B).   What is more, as a result of DMI's *knowing and willful violations* of 47

---

or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 951 (9th Cir. 2009).

U.S.C. 227, Plaintiff is entitled to receive $1,500.00 in treble damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

WHEREFORE, Plaintiff, Nathaniel Phillips, requests the following relief:

    a.  find that Mortgage Defendants negligently violated 47 U.S.C. § 227;

    b.  award statutory damages of at least $500.00, and treble damages of $1,500.00, for each and every violation; and,

    c.  grant any other relief deemed appropriate and equitable.

## COUNT VI
## VIOLATION(S) OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (AGAINST NLS AND DMI)

191.    Plaintiff incorporates each of the preceding allegations as if specifically stated herein.

192.    Plaintiff is a "person" as defined by 815 ILCS § 505/1(c).

193.    Plaintiff is a "consumer" as defined by 815 ILCS § 505/1(e).

194.    Dovenmuehle is engaged in "commerce" as defined by 815 ILCS § 505/1(f).

195.    NLS is engaged in "commerce" as defined by 815 ILCS § 505/1(f).

196.    Mortgage Defendants violated 815 ILCS 505/2 by engaging in unfair and deceptive acts, and by using fraud, deception, and misrepresentation in their attempts to collect a debt.

**a.  Unfairness**

197.    Mortgage Defendants' conduct in relation to Plaintiff' loan was willful, malicious, unfair, arbitrary, and designed to place Plaintiff's account in a perpetual state of default.

198.    Mortgage Defendants' conduct offends public policy as it has demonstrated an industry-wide practice of misapplying payments causing borrowers to be in "default" through no fault of their own.

36

199.     Mortgage Defendants failed to acknowledge the 2010 loan modification, and instead, treated first mortgage as if it was in default.

200.     Mortgage Defendants failed to correctly apply payments pursuant to the 2012 loan modifications for first and second mortgage, and instead, treated the first mortgage as if it was in default.

201.     Mortgage Defendants' actions are immoral and oppressive because misapplying payments, wrongfully deeming Plaintiff in default, and prosecuting a wrongful foreclosure amounts to an extreme undue hardship to borrower.

202.     Mortgage Defendants' actions, in causing to be placed numerous collection calls to Plaintiff's cellular telephone to collect monies not owed despite Plaintiff's repeated demands that it stop doing, are oppressive.

203.     Mortgage Defendants' actions in mailing a barrage of letters and statements to Plaintiff stating that he was behind on his mortgage payments when, in fact, he was not, are also immoral and oppressive.

204.     Mortgage Defendants' unfair actions violate public policy and shed light on an industry where business decisions are driven by profit, with complete disregard for consumers, where mundane but unusual issues go unheeded – with the consumer suffering the consequences.

    **b.  Deception**

205.     Mortgage Defendants following actions were deceptive: (i) attempting to collect and foreclose upon a debt that was not in default; (ii) sending statements and notices claiming the subject loans were past due, when they were not; (iii) making misrepresentations of fact regarding the status of the subject loan and the payment history; (iv) and making phone calls to Plaintiff designed to collect monies that were not owed.

37

### c. Misrepresentation

206.    Mortgage Defendants' above conduct also constitutes misrepresentation; Mortgage Defendants misrepresented to Plaintiff that his account was consistently past due when, in fact, Plaintiff paid ahead.

207.    Mortgage Defendants made material misrepresentations regarding the amounts due under the loan and how Plaintiff's payments were applied.

208.    Due to the misrepresentations, Plaintiff was unable to determine why he was consistently deemed in default.

209.    The misrepresentations, deception, and unfair practices complained of occurred in in the course of conduct involving trade or commerce.

210.    Through the described conduct, Mortgage Defendants intended that Plaintiff rely on their unfair and deceptive actions.

211.    Plaintiff has suffered actual harm in the form of severe emotional distress, anxiety, depression, and financial loss in the form of medical bills and attorney's fees.

212.    An award of punitive damages is appropriate as Mortgage Defendants' unfair and deceptive acts were outrageous, wanton and willful, and showed a conscious disregard and indifference for the rights of Plaintiff, and consumers generally.

213.    Mortgage Defendants' unfair and deceptive acts showed a conscious disregard and indifference for the rights of Plaintiff, and consumers generally as:

      **i.**    consumers reasonably anticipate that mortgage servicers will communicate accurately and truthfully regarding their accounts;

      **ii.**    consumers reasonably anticipate that mortgage servicers will not use false, deceptive or misleading representations or means regarding their accounts; and

     **iii.**    consumers reasonably anticipate that mortgage servicers will make honest efforts to resolve any and all disputes expeditiously and impartially.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests the following relief:

     **a.**    find that Mortgage Defendants' unfair and deceptive acts violate the Illinois Consumer Fraud and Deceptive Business Practices Act;

     **b.**    award actual, and punitive damages, and costs of this action including expenses together with attorney's fees as determined by this Court; and

     **c.**    grant any other relief deemed appropriate and equitable.

## COUNT VII
### VIOLATION(S) OF THE FAIR CREDIT REPORTING ACT
### (AGAINST NLS)

214.    Plaintiff incorporates the preceding allegations as if specifically stated herein.

215.    Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

216.    NLS is a "person" as defined by 15 U.S.C. §1681a(b).

217.    NLS is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

218.    At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

219.    NLS violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Plaintiff and TransUnion.

220.     NLS violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by TransUnion that was sent by Plaintiff in his detailed disputes pursuant to §1681i(a)(2).

221.     Had NLS reviewed the information provided by TransUnion, it would have corrected the inaccurate designation of the subject loan and transmitted the correct information to TransUnion. Instead, NLS wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

222.     NLS violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes to TransUnion.

223.     NLS violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Plaintiff's credit files. Instead, NLS continued to report the inaccurate, incomplete, and misleading information in Plaintiff's credit file after receiving Plaintiff's detailed disputes.

224.     NLS failed to conduct a reasonable reinvestigation of its reporting of the subject loan or delete the inaccurate reporting from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from TransUnion under 15 U.S.C. §1681i(a)(1).

225.     NLS violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

226.     Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, NLS did not correct the errors or trade line to report accurately. Instead, NLS wrongfully re-reported, furnished, and re-furnished false and erroneous information, after Plaintiff's disputes, to one or more third parties.

227.     Moreover, NLS failed to report the subject loan as disputed by Plaintiff.

40

228.     NLS's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiff. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008); *see also Freedom v. CitiFinancial, LLC*, 2016 U.S. Dist. LEXIS 97533 (N.D. Ill. 2016).

229.     A reasonable investigation by NLS would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported in Plaintiff's TransUnion credit file.

230.     Had NLS taken steps to investigate Plaintiff's valid disputes or TransUnion's request for investigation, it would have permanently corrected the erroneous credit reporting of the subject loan. Plaintiff provided all relevant information regarding her disputes in his requests for investigation.

231.     By deviating from the standards established by the mortgage servicing industry and the FCRA, NLS acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to TransUnion.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests the following relief:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  An order directing NLS to immediately delete the inaccurate information from Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d.  Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT VIII
### VIOLATION(S) OF THE FAIR CREDIT REPORTING ACT
### (AGAINST DMI)

232.     Plaintiff incorporates the preceding allegations as if specifically stated herein.

233.     Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and(b).

234.     DMI is a "person" as defined by 15 U.S.C. §1681a(b).

235.     DMI is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

236.     At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

237.     DMI violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Plaintiff and Equifax.

238.     DMI violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by Equifax that was sent by Plaintiff in his detailed disputes pursuant to §1681i(a)(2).

239.     Had DMI reviewed the information provided by Equifax, it would have corrected the inaccurate designation of the subject loan and transmitted the correct information to Equifax. Instead, DMI wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

240. DMI violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes to Equifax.

241. DMI violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Plaintiff's credit files. Instead, DMI continued to report the inaccurate, incomplete, and misleading information in Plaintiff's credit file after receiving Plaintiff's detailed disputes.

242. DMI failed to conduct a reasonable reinvestigation of its reporting of the subject loan or delete the inaccurate reporting from Plaintiff's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

243. DMI violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

244. Despite the blatantly obvious errors in Plaintiff's credit files, and Plaintiff's efforts to correct the errors, DMI did not correct the errors or trade line to report accurately. Instead, DMI wrongfully re-reported, furnished, and re-furnished false and erroneous information, after Plaintiff's disputes, to one or more third parties.

245. Moreover, DMI failed to report the subject loan as disputed by Plaintiff.

246. DMI's failure to report that Plaintiff disputed the accuracy of the trade line was a failure to accurately update the information because it was "misleading in such a way and to such an extent that it [could] be expected to have an adverse effect" on Plaintiff. *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142 (4th Cir. 2008); *see also Freedom v. CitiFinancial, LLC*, 2016 U.S. Dist. LEXIS 97533 (N.D. Ill. 2016).

247. A reasonable investigation by DMI would have confirmed the veracity of Plaintiff's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit file.

248.     Had DMI taken steps to investigate Plaintiff's valid disputes or Equifax's request for investigation, it would have permanently corrected the erroneous credit reporting of the subject loan. Plaintiff provided all relevant information regarding her disputes in his requests for investigation.

249.     By deviating from the standards established by the mortgage servicing industry and the FCRA, DMI acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests the following relief:

    a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b. An order directing DMI to immediately delete the inaccurate information from Plaintiff's credit reports and credit files;

    c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

    d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

    e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

    f. Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

    g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT IX
### VIOLATION(S) OF THE FAIR CREDIT REPORTING ACT
### (AGAINST TRANSUNION)

250.     Plaintiff incorporates the preceding allegations as if specifically stated herein.

251.     TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

252.     TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

253.     At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

254.     If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

255.     Plaintiff provided TransUnion with all relevant information in his requests for investigation and reinvestigation.

256.     TransUnion prepared Plaintiff's consumer reports containing inaccurate, incomplete, and materially misleading information by reporting the subject loan 120 days past due and with a wrong monthly payment amount.

257.     Moreover, TransUnion prepared an incomplete consumer report regarding Plaintiff by failing to completely and accurately notate that the subject loan was disputed in violation of 15 U.S.C. §1681c(f).

258.     TransUnion violated 15 U.S.C. §1681 by failing to respond to Plaintiff.

259.     TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished as they related to Plaintiff. TransUnion prepared patently false, incomplete, and a materially misleading consumer reports concerning Plaintiff. TransUnion had actual knowledge that Plaintiff had made timely payments on the subject loan. Nonetheless, TransUnion wrongfully reported that the subject loan was 120 days past due and with an erroneous monthly payment amount.

45

260.    TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to then subsequently delete or correct the information in Plaintiff's credit files.

261.    Had TransUnion taken any steps to investigate Plaintiff's valid disputes, it would have determined that the subject loan was not past due.

262.    TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's disputes to NLS. Upon information and belief, TransUnion failed to include all relevant information as part of the notice to NLS regarding Plaintiff's disputes that TransUnion received from Plaintiff.

263.    TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and NLS with regard to the subject loan.

264.    TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiffs' disputes.

265.    TransUnion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from NLS that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

266.    TransUnion violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject loan.

267.    Despite actual knowledge that Plaintiff's credit files contained erroneous information, TransUnion readily sold Plaintiff's inaccurate, incomplete, and misleading report to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

46

268.    The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

269.    By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with reckless disregard for its duties to report accurate and complete consumer credit information.

270.    It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

271.    TransUnion's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's consumer files and reporting Plaintiff's credit information.

272.    TransUnion's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests the following relief:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  An order directing TransUnion to immediately delete the inaccurate information from Plaintiffs' credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n(3) and 15 U.S.C. §1681o(2); and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT X
## VIOLATION(S) OF THE FAIR CREDIT REPORTING ACT
### (AGAINST EQUIFAX)

273.    Plaintiff incorporates the preceding allegations as if specifically stated herein.

274.    Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

275.    Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

276.    At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

277.    If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

278.    Plaintiff provided Equifax with all relevant information in his requests for investigation and reinvestigation.

279.    Equifax prepared Plaintiff's consumer reports containing inaccurate, incomplete, and materially misleading information by reporting the subject loan with a wrong past due amount, a wrong balance amount, over 120 days past due, and by failing to mark the account as "paid as agreed."

280.    Moreover, Equifax  prepared an incomplete consumer report regarding Plaintiff by failing to completely and accurately notate that the subject loan was disputed in violation of 15 U.S.C. §1681c(f).

281.     Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished as they related to Plaintiff.  Equifax prepared patently false, incomplete, and a materially misleading consumer reports concerning Plaintiff. Equifax had actual knowledge that Plaintiff had made timely payments on the subject loan. Nonetheless, Equifax wrongfully reported the subject loan with a wrong balance amount, a wrong past due amount, 120 days past due and continually failed to mark the account as disputed.

282.     Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to then subsequently delete or correct the information in Plaintiff's credit files.

283.     Had Equifax taken any steps to investigate Plaintiff's valid disputes, it would have determined that the subject loan was not past due.

284.     Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's disputes to DMI. Upon information and belief, Equifax failed to include all relevant information as part of the notice to DMI regarding Plaintiff's disputes that Equifax received from Plaintiff.

285.     Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff and DMI with regard to the subject loan.

286.   Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's disputes.

287.     Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from DMI that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

288.     Equifax violated 15 U.S.C. §1681c(f) by failing to notate that Plaintiff disputed the reporting of the subject loan.

289.     Despite actual knowledge that Plaintiff's credit files contained erroneous information, Equifax readily sold Plaintiff's inaccurate, incomplete, and misleading report to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

290.     The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

291.     By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duties to report accurate and complete consumer credit information.

292.     It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

293.     Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's consumer files and reporting Plaintiff's credit information.

294.     Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff, Nathaniel Phillips, requests the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing Equifax to immediately delete the inaccurate information from Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n(3) and 15 U.S.C. §1681o(2); and

g.  Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiff demands trial by jury.**

Dated: February 23, 2018                                **Respectfully Submitted,**

/s/ Majdi Y. Hijazin
Majdi Y. Hijazin, *Of Counsel*
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: (630) 575-8181
Fax: (630) 575-8188
mhijazin@hijazinlaw.com