UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHANIEL PHILLIPS,<br><br>   Plaintiff,<br><br>v.<br><br>DOVENMUEHLE MORTGAGE, INC.; NEIGHBORHOOD LENDING SERVICES, INC.; TRANSUNION, LLC; and EQUIFAX INFORMATION SERVICES, LLC,<br><br>   Defendants. | Case No. 1:17-cv-08882<br><br><br>Judge: Honorable Jeffrey T. Gilbert |

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY**

Plaintiff, NATHANIEL PHILLIPS, for his reply in support of his motion to compel discovery from Defendant Dovenmuehle Mortgage, Inc. ("DMI") states as follows:

### I.     Introduction

Despite DMI's counsel's representation at the last status hearing of December 6, 2018 (and presentment of Plaintiff's Motion to Compel) that he believes the discovery issues would be resolved in upcoming weeks, DMI's Response to Plaintiff's Motion to Compel ("DMI's response") paints an entirely different picture. Indeed, DMI continues to evade its responsibilities under Rule 34, fails to provide *any* certification of its purported searches for information, and flat out refuses to provide documentation that is highly necessary with regards to the claims and defenses in this case.

### II.     Argument

**A.    DMI continues to ignore the requirements of FRCP 34**

Federal Rule of Civil Procedure 34, in relevant part, states:

1

> (a) IN GENERAL. A party may serve on any other party a request within the scope of Rule 26(b):
> (1) to produce and permit the requesting party or its representative to inspect, copy, test, or sample . . . items in the responding party's possession, *custody, or control [.] (emphasis added) (deletions made)*.

As such, the inquiry is not just whether information is within the responding party's possession, but also whether it is within a responding party's custody or control. [1] Indeed, the first time DMI has made any representation that it produced *anything* within it custody or control, (not simply just in its possession) was in DMI's Response. There DMI claims that it "produced all emails within its custody and control on November 19, 2018." Otherwise, even after the filing of Plaintiff's Motion, DMI defiantly continues to ignore both FRCP 34 and Plaintiff's Motion, only referencing documents that it *possesses*.

      **i.    Dialer Records**

Rather than provide any explanation as to why dialer records from 2009 to 2016 were not produced, DMI, for the first time, only responds that its "Avaya phone system does not store a list of the numbers dialed and is unable to produce the information sought by Plaintiff." *See* DMI's Response, pg. 2. Such representation then begs the question, "if DMI produced dialer records from 2016 through the present, then how is it that DMI's system can't store numbers?" Plaintiff is at a loss as to why DMI can produce some dialer records, but not others. DMI should be required to provide some sort of explanation.

DMI also argues that a description of each phone call is provided in DMI's servicing notes. Plaintiff understand this statement to mean that because DMI has produced its servicing notes, it should not be required to produce dialer records and/or that Plaintiff simply doesn't need dialer records. First, as Plaintiff as made clear in his Motion, a portion of the DMI's servicing notes

---

[1] Plaintiff has cited supporting case law in his Motion to Compel ("Plaintiff's Motion.") *See* pgs. 7-8 of Plaintiff's Motion.

appear to be missing. As such, any records of calls within the time frame of the missing notes would also be missing. Secondly, dialer records provide a line-by-line itemization of each call while the servicing notes do not. Dialer records also provide additional information such as certain codes that Plaintiff will depose DMI about. So that the Court can visualize the difference between the servicing notes and dialer records, Plaintiff attaches both documents to this brief. [2] Attached as Exhibit A are the produced dialer records and attached as Exhibit B are the produced servicing notes. In short, DMI should either produce the rest of the dialer records or provide a certified statement as to the reasons why it cannot.

### ii. Call Recordings

The content of conversations between Plaintiff and DMI is undoubtedly essential to Plaintiff's claims. But in continuing to skirt its Rule 34 obligations, DMI continues to speak only in terms of recordings ". . . in DMI's *possession*," making no mention of recordings that might be in its custody or control. *See* DMI's Response, pg. 3. DMI also states that it has been working "diligently and continuously to confirm it has no access to further call recordings, and believes that it does not." Considering Plaintiff issued his discovery requests back on June 12, 2018, it is quite troubling that DMI still cannot definitively advise Plaintiff and this Court whether or not it has produced all call recordings. The record reflects hundreds of phone calls made by DMI to the Plaintiff. The produced servicing notes and dialer records reflect evidence of multiple phone conversations between DMI and Plaintiff, for which DMI has not produced corresponding recordings. DMI should be required to provide the rest of the call recordings or provide a certified statement as to the search it has conducted and the reasons why it cannot produce the rest of the recordings.

---

[2] Since there is a protective order in place, Plaintiff will not file Exhibits A and B. Rather, Plaintiff will include them in the courtesy copies that will be delivered to the Court.

### iii. Missing Account Notes and Emails

Ten months of account (or servicing) notes are missing from DMI's production. No explanation is given. DMI should be required to certify that there are no more servicing notes or produce the missing account notes.

DMI states that it is "not withholding any non-privileged emails." DMI should be required to certify that there are no more emails, and since Plaintiff is learning for the first time from DMI's Response that there may be privileged emails, DMI should also be required to submit a privilege log.

### iv. All above categories

As to all the above categories, courts can certainly require parties to provide a certification in such situations. *See Makowski v. Smith Amundsen, LLC*, 2010 U.S. Dist. Lexis 81353 (N.D. Ill., Aug. 11, 2010) (granting in part Defendants' Motion to Compel by requiring the Plaintiff to either provide supplemental responses by a certain date or providing a certification that Plaintiff's responses to the discovery requests are complete).

Moreover, in *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11 C 4462, 2013 U.S. Dist. LEXIS 127723 (N.D. Ill. Aug. 29, 2013), the Court stated that Rule 34 required defendant to provide a statement that a diligent search and reasonable inquiry be made in an effort to locate the item requested *and* the reason why defendant is unable to comply – **" . . .e.g., the document never existed; has been lost or stolen; was inadvertently destroyed; or is not in [defendant's] possession, custody or control."** See, e.g., *Searock v. Stripling*, 736 F.2d 650 (11th Cir. 1984); *Dunn v. Trans World Airlines Inc.*, 589 F.2d 408 (9th Cir. 1978). Similarly, here, DMI should either provide the requested information or certify the reasons that it cannot.

### B. DMI is Obligated to Produce Pattern Evidence

As a preliminary matter, DMI insists that Plaintiff is seeking the *production* of "prior consumer lawsuits, complaints, administrative orders, and other public documents" and further goes on to say that "[the] request should be rejected because such *documents* are publically available. . ." (*omissions made*). *See* DMI's Response, p. 3-4. However, Plaintiff can only assume that DMI knows that such a statement is not true. Plaintiff is not seeking documents. To be clear, per DMIs' request, Plaintiff has twice narrowed his discovery requests. Initially, Plaintiff requested the above documents showing instances of similar conduct against DMI as alleged in this case. DMI objected. Then Plaintiff requested documentation *only* in instances where DMI was found liable. DMI objected. Then, Plaintiff requested that DMI simply identify the cases and advising that he will pull the cases himself. *See* Plaintiff's Motion, pgs. 5-6. For example, DMI cites to *Sabratek Liquidating LLC v. KMPG LLP*, 2002 U.S. Dist. LEXIS 7483 (N.D. Ill., Apr. 25, 2002), in support of its argument. But the Plaintiff in *Sabratek* requested *document*s concerning other lawsuits which involved defendants. Plaintiff makes no such request here. *Sabratek* is inapplicable.

Plaintiff also cites to Federal Rule of Civil Procedure 26 in making the argument that Plaintiff may obtain himself "from other source that is more convenient, less burdensome, or less expensive." First, Rule 26(b)(2)(C)(i) requires that the Court first determine that Plaintiff can obtain the requested discovery from a source that is more convenient, less burdensome, or less expensive. No such determination has been made. And, here, while DMI cites to certain "choice" words from Rule 26, it does not advance any argument as to what that source would be and why obtaining discovery from that source would be more convenient, less burdensome, or less expensive. Similarly, DMI claims that the information sought is equally accessible to Plaintiff.

Plaintiff disagrees. While DMI claims for the first time that it does not maintain a "complete internal record of the nature of all matters filed against DMI. . .," it can only be expected that since DMI had direct involvement in prior cases evidencing similar conduct, it would be in a much better position to simply identify (not produce documents) of those past instances of similar conduct. It can only be presumed that someone at DMI should be able to provide some kind of information. Instead, DMI has chosen to make blanket objections and refuses to provide any information.

DMI also relies on *Bey v. O'Donnell*, No. 13-CV-952-JPS, 2014 U.S. Dist. LEXIS 75335 (E.D. Wis. June 3, 2014) where an inmate-plaintiff's motion to compel seeking a list of cases was *partially* denied. However, *Bey* is distinguishable and perhaps even supports Plaintiff's position. In *Bey,* Court did not allow discovery of a list of cases brought against Defendant and information about the allegations of those suits because the Court found that the information could be obtained from some other source that is more convenient, less burdensome, or less expensive. The Court relied on defendants' suggestion the information was readily available in the jail's library. *Bey* at *9. Here DMI offers no such alternative source. Moreover, in *Bey* the defendants *did* provide docket sheets from PACER and CCAP of cases alleging similar conduct. *Bey* at *8. Here, DMI has provide nothing. Finally, in *Bey* the Court partially granted Plaintiff's motion to compel, ordering Defendants to produce a list of complaints received and reviewed by certain defendants as well as the dates they were filed, the names of the defendants involved and what capacity they were involved, and explain the resolution of the complaints. *Bey* at *3. On the other hand, DMI has produced no evidence of prior conduct.

In sum, DMI is obligated to produce pattern evidence for at least three reasons: (1) Plaintiff has an ICFA claim which allows for punitive damages. In order to obtain punitive damages, Plaintiff must show a pattern and practice of conduct on the part of DMI that is similar to the

conduct alleged in the Complaint; (2) Plaintiff has a RESPA claim, a portion of which also requires Plaintiff to show a pattern and practice of noncompliance by DMI[3]; and (3) In its Answer to the Complaint, DMI has denied that there exists a pattern and practice of similar conduct in response to both the ICFA and RESPA claims. *See* Plaintiff's Complaint, ¶179, ¶ 198, ¶ 204, ¶212, and ¶ 213. As such, Plaintiff and DMI are at issue as to this point and discovery into pattern evidence is warranted.

### C. DMI is Obligated to Produce Its Financial Information

Contrary to what DMI says, Plaintiff requires DMI's financial records not for the sole purpose of determining punitive damages, but because Plaintiff has filed a multiple count complaint making serious allegations regarding DMI's conduct for which Plaintiff believes DMI will ultimately be held liable. Plaintiff also seeks statutory damages, actual damages, attorney fees and costs – again, not simply punitive damages. Furthermore, despite DMI's assertion, Plaintiff has never "conceded that his requests as to DMI's financial records have nothing to do with the claims or defenses." *See* DMI's Response, pg. 6.

Next, DMI purports to be concerned about producing confidential and sensitive financial information, but there is a protective order in place which should alleviate the concern. And despite DMI's claim that Plaintiff should be able to determine what DMI can afford to pay from the two documents that is submitted, quite the contrary is true. The documents submitted provide no information regarding DMI's assets or liabilities. For the Court's review, Plaintiff attaches these document as Exhibit C.[4] Moreover, in good faith, Plaintiff narrowed his request for financial

---

[3] In its Response, DMI entirely ignores Plaintiff's argument as to the RESPA claim. *See* Plaintiff's Motion, p.8.
[4] Since there is a protective order in place, Plaintiff will not file Exhibit C. Rather, Plaintiff will include it in the courtesy copies that will be delivered to the Court.

information. *See* Plaintiff's Motion, pg. 5. Despite doing so, DMI refuses to provide the necessary information.

In further support of its arguments, DMI cites to *Lanigan v. Babusch*, No. 11 C 3266, 2011 U.S. Dist. LEXIS 124416 (N.D. Ill. Oct. 27, 2011). But *Lanigan* does not help DMI. While *Lanigan* actually supports the proposition that a party's net worth is discoverable where punitive damages are at issue, as stated above, Plaintiff seeks other types of damages in his Complaint. *See Challenge Aspen v. King World Prods. Corp.,* 2001 U.S. Dist. LEXIS 18357, 2001 WL 1403001, at * 3 (N.D. Ill. Nov. 9, 2001). In *Lanigan,* the Court stated a party cannot "merely rely on broad, conclusory allegations in the complaint" in order to compel discovery of a party's net worth *Salstone v. Gen. Felt Indus.,* 1986 U.S. Dist. LEXIS 17163, 1986 WL 13738, at *2 (N.D. Ill. Dec. 4, 1986); see *Chenoweth v. Schaaf,* 98 F.R.D. 587, 589 (W.D. Pa. 1983). Instead, "[t]he complaint must allege a set of circumstances which will demonstrate . . .at least a real possibility that punitive damages will be at issue." *Lanigan* at *10. Here, Plaintiff has just done that. For example, in his Complaint, Plaintiff has alleged the following:

> Mortgage Defendants failed to acknowledge the 2010 loan modification, and instead, treated first mortgage as if it was in default.
>
> Mortgage Defendants failed to correctly apply payments pursuant to the 2012 loan modifications for first and second mortgage, and instead, treated the first mortgage as if it was in default.
>
> Mortgage Defendants' actions are immoral and oppressive because misapplying payments, wrongfully deeming Plaintiff in default, and prosecuting a wrongful foreclosure amounts to an extreme undue hardship to borrower.
>
> Mortgage Defendants' actions, in causing to be placed numerous collection calls to Plaintiff's cellular telephone to collect monies not owed despite Plaintiff's repeated demands that it stop doing, are oppressive. *See* Plaintiffs' Complaint, ¶ 199- 202.

Plaintiff has further alleged:

> Mortgage Defendants following actions were deceptive: (i) attempting to collect

and foreclose upon a debt that was not in default; (ii) sending statements and notices claiming the subject loans were past due, when they were not; (iii) making misrepresentations of fact regarding the status of the subject loan and the payment history; (iv) and making phone calls to Plaintiff designed to collect monies that were not owed.

Mortgage Defendants' actions in mailing a barrage of letters and statements to Plaintiff stating that he was behind on his mortgage payments when, in fact, he was not, are also immoral and oppressive.

Mortgage Defendants' above conduct also constitutes misrepresentation; Mortgage Defendants misrepresented to Plaintiff that his account was consistently past due when, in fact, Plaintiff paid ahead.

Mortgage Defendants made material misrepresentations regarding the amounts due under the loan and how Plaintiff's payments were applied.

Due to the misrepresentations, Plaintiff was unable to determine why he was consistently deemed in default. *See* Plaintiffs' Complaint, ¶ 205-209.

The above allegations are specific and provide a set of circumstances which demonstrate the punitive damages will be at issue. As such, as did co-defendant NLS, DMI must submit its financial information.

WHERFORE, Plaintiff NATHANIEL PHILLIPS prays for an Order compelling the responses to discovery as set forth in Plaintiff's motion and in the reply in support thereof, any appropriate sanctions, costs and fees, and any other relief this Court deems just and equitable.

Dated: January 10, 2019                                  Respectfully Submitted,

*/s/ Majdi Y. Hijazin*
Majdi Y. Hijazin, *Of Counsel*
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd.
2500 South Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone: (630) 575-8181
Fax: (630) 575-8188
mhijazin@hijazinlaw.com